### ROY HARRINGTON ET AL v. W. L. MAYO.

#### Decided June 18, 1910.

**1.—Exemption—Homestead Defined.**

By the Constitution of this State there is exempt to the head of a family but one homestead, which, in a city or town, may consist of lot or lots contiguous to or separated from each other, provided they are put to such uses as contribute to the enjoyment of the home; and one or more of such lots may be devoted to the calling or business of the head of the family.

**2.—Same—Business Homestead.**

The business homestead must be confined to one place; separate and disconnected lots can not be appropriated as so many different places of business, nor for purposes auxiliary to the main business. The exemption applies to only one business and one location.

**3.—Same.**

While lots separated from the residence homestead are exempt from forced sale if they are put to such uses as contribute to the enjoyment of the home, and while the business homestead may be established upon a lot or lots not contiguous to the residence homestead, yet the business of the head of the family must be confined to one place and can not be conducted upon several separate and disconnected lots.

**4.—Same—Case Stated.**

A defendant in execution was a school teacher, a married man, the head of a family, and owned a college building situated in a town; the college grounds and campus proper consisted of a tract of four acres; on a different lot, which was separated from the college grounds and campus by a street, were three large dormitories belonging to said defendant and used by him to room and board a large number of pupils who attended his school; defendant and his family resided in one of said dormitories and took their meals in another, with the pupils boarded by him. Defendant owned six other lots, all of which were separate from the college lot and the dormitory lot above mentioned; on some of said six lots was situated another large dormitory in which a number of defendant's pupils slept; on another lot was a house partly occupied by a gardener who cultivated a garden on said lots from which vegetables were used to supply defendant and his family and the pupils board-

ing with him; still other of said lots were used as a baseball ground.  Held, only the lot on which was situated the college building and campus, and the lot on which was situated the dormitory occupied by defendant and his family, and one of the lots on which was situated the vegetable garden, were exempt as homestead from execution and forced sale.

**5.—Homestead—Mere Intention Insufficient.**

Mere intention to make a tract of land a part of the homestead is not sufficient to give it the homestead character.  Some act must be done evidencing an intention to use it for or in connection with the home place for— the comfort or convenience of the family, or as a place of business for the head of the family.  Evidence stated and held insufficient to make a certain lot a part of a homestead.

Appeal from the District Court of Hunt County  Tried below before Hon. T. D. Montrose.

*Sherrill, Mulkey & Hamilton,* for appellants.—The court erred in holding that the ¼-acre lot in the corner of·block 49, in the city of Commerce, being the fourth tract described in plaintiff's petition, was a part of plaintiff's homestead.  Constitution, art. XVI, sec. 51; Rev. Stats., art. 2396; Kempner v. Comer, 73 Texas, 196; Churchwell v. Sweeney, 29 Texas Civ. App., 166; George v. Ryon, 61 S. W., 138; Johnson v. Burton, 39 Texas Civ. App., 249; Ford v. Fosgard, 25 S. W., 445; Shryock v. Latimer, 57 Texas, 674.

A lot in a town not "occupied or used for the purpose of a home, and not occupied as a place to exercise the calling or business of the head of the family," but situated some distance from the homestead and not contiguous thereto, and used for purposes merely incidentally profitable to the business of the head of the family, is not exempt from sale under execution.  Evans v. Pace, 51 S. W., 1094; Hinzie v. Moody, 1 Texas Civ. App., 26; Pfeiffer v. McNatt, 74 Texas, 640; McDonald v. Campbell, 57 Texas, 614; Levy v. Lacour, 94 S. W., 380; Wingfield v. Hackney, 69 S. W., 446.

*Looney & Clark,* for appellee.—Where, as a part of an institution of learning, the homestead of a family, a lot is purchased for the purpose of erecting a music hall in which music is to be taught by the wife in connection with such institution, and where the intention to make such use of the property is manifested by placing material on the ground to erect such hall, it becomes a part of the homestead in fact, is not subject to execution, and this is true although the lot was purchased by the wife without the knowledge of the husband until money was called for to pay for same, it appearing that the husband furnished the money and concurred in the use to which the property was to be put, although he afterwards changes his mind, "buys" the lot from his wife and intends to use it for garden purposes instead of a music hall.  Pryor v. Stone, 19 Texas, 371; Bell v. Greathouse, 49 S. W., 258; Dobkins v. Kuykendall, 81 Texas, 180; Waggoner v. Haskell, 89 Texas, 435; Anderson v. Sessions, 93 Texas, 279; Parr v. Newby, 73 Texas, 468; Gunn v. Wynne, 43 S. W., 290; Maroney v. Connellee, 25 S. W., 448; Schneider v. Campbell, 21 S. W., 55.

The four-acre tract used ·as a garden was used for such purposes as

made it a part of the homestead. Maroney v. Connellee, 25 S. W., 448; Schneider v. Campbell, 21 S. W., 55; Waggoner v. Haskell, 89 Texas, 435; Anderson v. Sessions, 93 Texas, 279.

Lots with houses upon them used as rooming houses for pupils in the college or as a place in which to teach any branch of college work, are as much a part of the homestead as the college itself or other dormitories, and this is true although the college gardener occupies one room in one of these houses. Pryor v. Stone, 19 Texas, 373; Schneider v. Campbell, 21 S. W., 55; Maroney v. Connellee, 25 S. W., 448.

The play grounds of a college or school are as much a part of the institution as any other part. Maroney v. Connellee, 25 S. W., 448.

TALBOT, ASSOCIATE JUSTICE.—Appellants, O'Neal & Sons, a firm composed of W. A. O'Neal, G. W. O'Neal and E. C. O'Neal, having obtained two judgments against the appellee, W. L. Mayo, in causes Nos. 492 and 493 in the Justice Court of precinct No. 6, Hunt County, Texas, caused executions to issue thereon, which were placed in the hands of the appellant, Roy Harrington, constable of said precinct, and were by him levied upon the real estate in controversy on January 14, 1909, and the same was advertised to be sold, as provided by law, on the first Tuesday in April, 1909. Thereafter, on the 18th day of March, 1909, appellee, W. L. Mayo, brought this suit against the appellants, O'Neal & Sons and Roy Harrington, constable of said county and precinct, to enjoin the sale of said real estate, alleging that plaintiff was a married man and the head of a family, and that said property constituted his business as well as his residence homestead. A temporary injunction restraining appellants from selling said property under said execution was granted. The case was tried before the court without a jury and the injunction was perpetuated, the court being of the opinion, as expressed in the decree, that the property was the homestead of the appellee. From this judgment appellants have appealed to this court.

It was admitted upon the trial that the judgments, executions and levies were valid, and that the property was duly advertised for sale thereunder. The property levied on consists of several separate and distinct lots, situated in the city of Commerce, Hunt County, Texas; said city being incorporated and divided into blocks and lots. The evidence shows that appellee was a school teacher, a married man, the head of a family and that he owns and controls the East Texas Normal College, an institution of learning situated in said city. Between 1050 and 1100 pupils attended the school at the last session thereof before the trial of this case in the District Court. The college grounds and campus proper consists of four acres of land upon which the college building is situated. This building is a large, three-story brick school building. On block 6 of College Addition to said city, which is separated from the college grounds and campus by Mayo Street, is situated three large two-story brick dormitories, belonging and appellee and used by him to room and board a large number of pupils who attend this school. Appellee and his family reside in one of these dormitories and take their meals in another of said dormitories with the pupils boarded by him. The property levied upon did

not include the college grounds and campus, nor either of the three dormitories mentioned, but consists, as designated in the petition, of six tracts of land described as follows: "First tract: Situated on the east side of Campbell Street being lots Nos. 8, 9 and 10 in block 5 of the College Addition to said city. Second tract: One house and lot situated on the west side of Arp Street, being lot No. 1 in block No. 5 of the College Addition to said city. Third tract: One house and lot situated on the west side of Arp Street, being lot No. 3 in block No. 5 of the College Addition to said city. Fourth tract: Situated on the north side of Crockett Street and on the west side of Morse Street, beginning at the southeast corner of block 49 of the city of Commerce, according to J. H. Morgan's official map of said city; thence west to G. G. Lindsey's lot; thence north half of the entire distance to Pickett Street; thence east to Morse Street; thence south to the intersection of Morse and Pickett Streets, the place of beginning, containing about ¼-acre of land in the corner of block No. 49. Fifth tract: Two vacant lots situated on the east side of Campbell Street, being lots Nos. 11 and 12 in block No. 7 of the College Addition to said city. Sixth tract: About 4 acres of land lying and being at the south terminus of Campbell Street; beginning at the N. W. corner of W. J. Taylor's 6-acre tract; thence south 140 yards to W. J. Taylor's inside corner, being the north line of said Taylor's larger tract; thence west 140 yards; thence north 140 yards to Walnut Street; thence east with the south line of Walnut Street to the place of beginning."

On lots 11 and 12 and a part of lot 10 in block 5, above described, which block is separated from the college grounds and campus and the three dormitories in block 6 by Lee Street, is situated a large three-story brick building in which a number of pupils who attend appellee's school sleep. On lot 8 of said block 5, there is a small house occupied by six or eight pupils as roomers. One room of the house situated on lot No. 1 of said block 5 is occupied by appellee's gardener, the man employed to cultivate the gardens for the dormitories, and students occupy the other rooms. A part of the house situated on lot No. 3 in block 5 is used for instruction of pupils in telegraphy and typewriting and the balance is occupied by students as rooming apartments. Lots 11 and 12 in block 7, above described, were separated from the other property levied on by Greenville Street, but which street has been abolished by the city council, and had been used about eighteen months next preceding the levy of appellants' execution for a baseball ground; and the other parcels of land levied on, except the one-fourth acre in block 49, had been cultivated in vegetable gardens to supply appellee and his family and the students boarding with him, with vegetables.

The only question presented by the assignments of error, aside from one in regard to the admissibility of certain testimony, is whether or not, under the evidence relating to the use and occupancy of each tract of land in controversy and the law applicable thereto, all of said land, or any part thereof, constituted a part of appellee's residence or business homestead, and therefore exempt from forced sale.

Section 51 of article XVI of our present Constitution provides that the homestead in a city, town or village, shall consist of lot or lots not to exceed in value $5,000 at the time of their designation as the

homestead, without reference to the value of any improvements thereon, provided the same be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family. In construing this section of the Constitution in the case of Rock Island Plow Co. v. Alten et ux, 102 Texas, 366, our Supreme Court said: "The homestead here defined embraces the family residence or home as well as a place of business of the head of the family. There are not two homesteads, but one homestead, a part of which may be used for the business of the head of the family. Of the lots constituting the homestead there may be one or more, subject only to the limitation of the value of $5,000. They may be connected or disconnected from each other, provided they be used for the purposes of a home, that is, for such uses as contribute to the enjoyment of the home. One or more of these lots may be devoted to the business of the head of the family, but it must constitute 'a place to exercise the calling or business of the head of the family'. Under this definition of the homestead, that portion which is devoted to the business must constitute a place, that is, one place, at which the business is transacted. It may consist of more than one lot if so used as to make them a place for transacting the business."

This construction of the Constitution, with which we find no fault, makes it the settled law of this State that there is exempt to the head of a family but one homestead, which, in a city or town, may consist of lot or lots contiguous to or separated from each other provided they are put to such uses as contribute to the enjoyment of the home; and that one or more of such lots may be devoted to the calling or business of the head of the family, provided the same "constitute a place, that is, one place, at which the business is transacted." This construction confined the place of business of the head of the family to one place, and he may not appropriate any number of separate and disconnected lots as so many different places for the exercise of his calling or business, and claim that each is exempt as a place for transacting that business. In the case cited it is pointed out that the language of the Constitution when "applied to the lots to be used for the purpose of a home and the lots dedicated to the transaction of the business of the head of the family, presents a sharp contrast in the character of the two exemptions;" and it is held that, in contrast to the language of the Constitution which allows the residence of the family to be upon one lot, the garden upon another disconnected from the first, and the horse or cow lot upon another disconnected from both the others, for the business exemption the lots must constitute a place to exercise the calling or business of the head of the family, and that this forbids the construction that such lots might be used "for the purposes" or in aid of the business of the head of the family.

Appellee's calling or business was that of a school teacher, and the boarding of pupils was merely auxiliary thereto. The four acres of land upon which the college building was situated, as shown by the facts, were used by him as a place to exercise this calling or business, and one of the buildings situated on block 6 was used as his residence. This property was exempt by the Constitution and was not levied upon. The several lots and parcels of land levied on were "used in a way which was incidentally useful or profitable" to his calling and business

of teaching and not a necessary feature thereof. If it can be said that the boarding of students attending college is of itself a calling within the contemplation of the Constitution, still that calling could not be combined with the business of teaching so as to bring the property used separately for both callings within the protection of the exception laws. No more could this be done than could the head of the family carry on two separate and distinct businesses at different locations and invoke the shield of the exemption laws as to each location.

Again, if it can be said that the teaching and boarding of students, as done by appellee, constituted but one calling or business, and that the necessary ground and buildings therefor are exempt under the Constitution, still under the construction given the Constitution in the case of Rock Island Plow Co. v. Alten et ux, *supra,* as we understand it, that business can not be conducted in part on one lot and in part on another lot, if said lots are not contiguous. While lots separated from the residence homestead are exempt if they are put to such uses as contribute to the enjoyment of the home, and while the business homestead may be established upon a lot or lots not contiguous to the residence homestead, yet the above case of Rock Island Plow Co. v. Alten et ux, affirms that the language of the Constitution with respect to the business homestead confines such homestead to one place, and does not admit of the construction that the business or calling of the head of the family may be conducted upon several separate and disconnected lots.

Nor is land devoted to the raising of vegetables used to supply the table of such students, or lots disconnected from the college campus used as baseball grounds for the pleasure and amusement of the students or to promote athletic sports, exempt. As said by the Supreme Court, but one place at which the business of the head of the family may be conducted is protected, and property used in aid of the business or auxiliary to the place of business is not protected. Rock Island Plow Co. v. Alten et ux, *supra;* McDonald v. Campbell, 57 Texas, 614; Hinzie v. Moody, 1 Texas Civ. App., 26 (20 S. W., 69). Each of the several tracts, lots or parcels of land seized under appellants' execution was separated from the college grounds and campus either by streets or intervening lots, and we think none of them exempt except some one of those cultivated as a garden. The evidence shows that the four-acre tract and lot No. 9 in block No. 5 were so cultivated and that either would be sufficient as a garden for appellee's family. We think, therefore, that the injunction as to lot No. 9 in block No. 5, should be perpetuated.

But if we are mistaken in the foregoing view of the law as applied to all the other property involved in this controversy, still we think it is clear that the court erred in holding that the one-fourth acre lot in the corner of block No. 49 was a part of appellee's homestead. The uncontradicted evidence, in our opinion, showed that this tract did not, when levied upon, constitute either a part of appellee's business or residence homestead. Appellee testified in respect to this lot as follows: "The lot levied upon in block 49, described in the petition, is about one-half mile from the college buildings and grounds, and was bought by Mrs. Mayo for the purpose of building a music room on it,

and some material was put over there on it, but I bought her out and persuaded her not to build a music room over there, so that the intention has been abandoned. The lot is now vacant, but it would not have been, had our gardener had time to put it in sweet potatoes this year. It is not in anything now. The lot levied upon over there near the public school building was bought by Mrs. Mayo, and, when the trade was made, I did not know anything about it until she called on me for some money. She bought it, I shall say, for the purpose of building her a music hall. She teaches music in connection with my institution. There were quite a number of citizens wanted their little girls to commence under her and go to her there. It was too far for them to go to the college. The building has not been constructed. Some material was put on the ground, but the building has been abandoned, I suppose, positively abandoned. My idea is to keep her from building over there, if possible, and I bought her out, and am preparing to use that for vegetable purposes for our dormitory. It was not cultivated this year. Our gardener could not get to it. He was sick in February, and could not commence his work until about the 8th or 10th of March, and didn't get over there to that, but that is what it was to be used for. I changed the original purpose, and now intend to use it for the purpose of raising vegetables for the college. The material has not been removed, no material has been removed, none of it at all, but I have changed my intention and intend to use it for garden purposes."

If it be conceded that the purchase of this lot and the placing of some material thereon with the intention of appellee's wife to build a music hall thereon to be used by her in teaching music in connection with the institution of learning conducted by her husband, was sufficient to impress upon said property the homestead character, still this intention had been positively abandoned at the time appellants' execution was levied upon it, and its homestead character lost (Kempner v. Comer, 73 Texas, 196), and the subsequent intention of appellee, unaccompanied by any act of preparation, to use the lot at some future time for garden purposes, was insufficient to protect it as homestead property from forced sale. Mere intention to make a tract or parcel of land a part of the homestead is not sufficient to give it the homestead character. Some act must be done evidencing an intention to use it for or in connection with the home place, for the comfort or convenience of the family, or as a place of business for the head of the family. Brooks v. Chatham, 57 Texas, 31; Franklin v. Coffee, 18 Texas, 415; Johnson v. Burton, 39 Texas Civ. App., 249 (87 S. W., 181).

In the case of Churchwell et ux, v. Sweeney et al, 29 Texas Civ. App., 166 (68 S. W., 185), it appeared that Churchwell deposited some dirt upon his lot to fill depressions and was prevented from building by the ill health of his wife, and the question was, whether or not the depositing of the dirt upon the lot constituted such an act of preparation as would, in connection with the intention of the owner in building a house thereon and making it his home, give it the homestead character. The Court of Civil Appeals for the Fourth District, in holding that it was not, said: "After thus filled, it was nothing more than a

vacant unimproved lot as before. There was nothing done upon it or in connection with it calculated to give notice of an intent to appropriate it for homestead use." In the case at bar the one-fourth acre of land was vacant, and appellee had done no act whatever in preparation of the same for a garden, and, according to his own testimony, his only excuse for not doing so was the illness of his gardener. We conclude there was no such designation of the lot of land here referred to, either for a part of appellee's residence homestead or of his business homestead, as exempted it from the payment of his debts.

In the view taken of the case, as above expressed, the admission of the testimony complained of in assignments of error seven and eight become immaterial and need not be discussed.

The judgment of the court below, in so far as it perpetuates the injunction as to lot No. 9 in block No. 5, is affirmed; but as to each and all of the other tracts said judgment is reversed and judgment is here rendered for appellants dissolving said injunction.

*Affirmed in part and reversed and rendered in part.*