**MAYS v. MAYS et al.**
**No. 2139.**

Court of Civil Appeals of Texas. Beaumont. Nov. 13, 1931.

Rehearing Denied Nov. 18, 1931.

Minton & Minton, of Hemphill, and Lewis Lanier, of Jasper, for appellant.

Adams & Hamilton, of Jasper, and A. M. Huffman, of Beaumont, for appellees.

O'QUINN, J.

This action grew out of the application of Mrs. Allie Mays, surviving widow of John Mays, deceased, to Hon. A. S. McKee, judge of the probate court of Jasper county, Tex., to have certain property of the estate of her deceased husband set aside as her homestead. In her application, she alleged that John Mays was dead and that she was his surviving widow; that at the time she and deceased were married he established his homestead for himself and family on lots Nos. 1 to 14, inclusive, in block No. 10 of the Blackshear addition to the town of Jasper, in Jasper county, Tex., having his residence on lot No. 1 of said addition; that the occupation of the deceased, John Mays, and the only occupation which he pursued, was that of building tenant houses and using the rents thereof to support his family; that all of said lots were contiguous and did not exceed in value, exclusive of improvements, the sum of $5,000; that the proceeds of the rents of the tenant houses situated on said property were used by the said John Mays, deceased, for the support of his family; and that the use of said property as his homestead continued up to the time of his death. She further alleged that there was ample property belonging to said estate, other than that which she sought to have set aside as her homestead, to pay all debts and claims against the estate.

The administrator, appointed prior to her application, did not answer. A. L. Mays, Lewis Mays, Lee Mays, and Mrs. Lucille Raggie, appellees, all children and heirs of John Mays, deceased, contested appellant's application, and denied that deceased, John Mays, at the time he married appellant, established his homestead on lots 1 to 14 of block 10 of the Blackshear addition to the town of Jasper, Tex., but that he established his home on lot No. 1 of block No. 10 of said Blackshear addition, and that he continued to so use and occupy same until his death, and that he never at any time claimed or used any other property as his homestead. They further answered that there was another house on a portion of said lot No. 1, which was not a part of the homestead, was never occupied, used, or claimed as such by said John Mays, and which they asked to be surveyed off and declared to be no part of the homestead.

Appellees, contestants, in their answer, admitted that the occupation of the deceased, John Mays, at the time of his death, was that of building rent houses and renting them to various parties and using the proceeds for the support of himself and family—used all money so collected for such purpose. They further pleaded that they were willing for the residence occupied by appellant, being the same in which she lived with deceased at the time of his death, to be set aside to appellant as a homestead, exclusive of the tenant house situated on said lot No. 1, which they insisted forms no part of the homestead. Appellees further allege that all of the property of the estate of the deceased, John Mays, was the separate property of said deceased, he having acquired same prior to his marriage to appellant.

Judgment on the application was entered by the court setting aside to appellant, as a homestead, all of lot No. 1, block No. 1, Blackshear addition, except a space of 75x120 feet on which the tenant house was situated. From this judgment appellant appealed to the district court of Jasper county.

In the district court, the case was tried to the court without a jury, and judgment entered setting aside as a homestead for appellant all of lot No. 1 in block No. 10, on which the residence was situated, except a space of 75x120 feet on which the tenant house was situated. Appellant's application to have that portion of lot No. 1 on which the tenant house was situated, and lots 2 to 14, inclusive, set aside to her as a part of her homestead, was denied. From this judgment appellant has brought this appeal.

The facts are agreed. They show the deceased, John Mays, died November 6, 1929, and appellant, Allie Mays, is his surviving widow. Administration of the estate of deceased is pending in the probate court of Jasper county, Tex., with John H. Seale administrator. An inventory and appraisement of said estate had been duly returned and approved. At the time of the filing of appellant's application herein no order had been made by the court setting aside a homestead for the use and benefit of appellant. At the time deceased married appellant, he established his homestead on lot No. 1 in block No. 10, Blackshear addition to the town of Jasper. All the property shown in the inventory of the estate of deceased, John Mays, was his separate property. The estate was solvent. All parties accepted as correct the valuation fixed by the appraisers on the several parcels

of the estate. The lands were valued separately from the improvements thereon. The following sketch shows the situation of the lots in controversy:

The residence established by John Mays as his homestead is on lot No. 1, near Highway No. 8. It is seen that lot No. 1 is very large, long, and of irregular shape. The tenant house on said lot occupying a space 75x120 feet is to the rear. The lines delineating the 75x120 foot space were made by the order of the court, not by Mays. As before stated, lots 1 to 14, inclusive, are the ones sought by appellant to have set apart to her as a homestead. They are all contiguous, and there are nine tenant houses situated on lots 2 to 14, and one tenant house on lot No. 1; ten tenant houses on the lots in question. The lots 2 to 14, inclusive, were valued at $3,400. The tenant houses on them were valued at $12,400. Lot No. 1 was valued at $1,000, and the two houses on it (residence and tenant house) at $3,800. The lots, 1 to 14, inclusive, were valued at $4,400, exclusive of improvements. The ten tenant houses on said lots were continually rented by deceased, John Mays, and the proceeds used by him for the support of his family, so far as necessary. The only occupation of deceased was that of building tenant houses and renting them, using the rents for family support. The town of Jasper is incorporated.

The question here for decision is: What constituted the homestead of John Mays at the time of his death? Appellant earnestly insists that it was composed of. the fourteen lots above mentioned and delineated on the sketch. This is as strenuously denied by appellees, they insisting that said homestead consisted of lot No. 1, on which the residence was situated, less the tenant house shown on 75x120 feet, a part of lot No. 1. This view was adopted by both the probate and district courts, and is here assigned as error.

Article 16, § 51, of the Constitution, provides: "The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town, or village, shall consist of lot, or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

█ If we correctly understand appellant's brief, the contention is made: First, that the court erred in not designating and setting aside all of lots 1 to 14, inclusive, in block 10, as the homestead of appellant because the residence was situated on lot No. 1, and all of the lots were contiguous, were not of a greater value than $5,000, exclusive of improvements, and were used for homestead purposes. This contention cannot be sustained because the only use made of a portion of lot No. 1, and all of lots 2 to 14, inclusive, was to erect tenant houses, ten of them, on the lots and then to continuously rent these tenant houses and apply the proceeds to the support of the family. This use did not bring them within the constitutional provision that such lots (other than the one on which the residence was situated) must be used for the purposes of a home. In the Constitution the language applied to the lots to be used for the purposes of a home, and lots to be used as a place to exercise the calling or business of the head of a family, presents a strong contrast in the character of the two exemptions. It is not required that all of the lots shall be contiguous or that they shall constitute the actual site on which the home is located; but, nevertheless, they must be actually used for the purposes of a home. The residence may be upon one lot, the garden upon another disconnected from the first, and the third, disconnected from both the others, might be used for the purpose of a horse or cow lot, or other purposes of the home. But in any event, they must be used for home purposes. When Mays erected the tenant house on a portion of lot No. 1, and then rented the tenant house, collecting the rent and using it to support the family, that portion of lot No. 1 ceased to be a part of the homestead. It was not then being used for any homestead purpose. Blum v. Rogers, 78 Tex. 530, 15 S. W. 115. In Autry v. Reasor, 102 Tex. 126, 108 S. W. 1162, 1164, 113 S. W. 748, it is said: "The language of our Constitution in reference to homestead upon detached parcels of land is 'provided that the same (the detached parcels) may be used for the purposes of a home.' One of the purposes of a rural homestead is to support the family therefrom. Such is not ordinarily the purpose of a city residence occupied as a home. Hence we held in Blum v. Rogers, 78 Tex. 530, 15 S. W. 115, that where the portion of a homestead lot in a town had been improved and leased, and was no longer used for the purpose of a home, it was no longer exempt as a homestead, but was subject to forced sale." See also Williams v. Cleveland, 18 Tex. Civ. App. 133, 44 S. W. 689 (writ denied); Torres v. Cuneo (Tex. Civ. App.) 53 S. W. 828 (writ denied); Wurzbach v. Menger, 27 Tex. Civ. App. 290, 65 S. W. 679; Lipscomb v. Adamson Lumber Co. (Tex. Civ. App.) 217 S. W. 228; Strang v. Pray, 89 Tex. 525, 35 S. W. 1054; Wynne v. Hudson, 66 Tex. 1, 17 S. W. 110; Hargadene v. Whitfield, 71 Tex. 490, 9 S. W. 475; Iken v. Olenick, 42 Tex. 195, 201; Medlenka v. Downing, 59 Tex. 32, 39; Nance v. Rucker (Tex. Civ. App.) 294 S. W. 294.

█ But appellant insists that the deceased, John Mays, followed the business of building and renting tenant houses and collecting the rents and using them for the support of him-

152

self and family, and had no other calling or business, and so the property, other than the residence on lot No. 1 (lots 2 to 14), was under the law a part of his homestead. This is in effect a claim for a business homestead. The Constitution provides that the business home shall be *a place* where the head of the family may exercise his calling or business, and that *that place* does not necessarily have to be on the lot or lots on which is situated the residence, but it must be *a place where the calling or business is exercised*. This does not mean that there are two homesteads, but, to the contrary, there is and can be but one homestead. It may consist of a lot or lots, and they do not have to be contiguous—may be disconnected—"provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family." One or more of the lots may be used for the residence, and one or more for the business home—*the place* where the head of the family exercises his calling or business. Rock Island Plow Co. v. Alten, 102 Tex. 366, 116 S. W. 1144; Harrington v. Mayo, 61 Tex. Civ. App. 610, 130 S. W. 650, 651; Hinzie v. Moody, 1 Tex. Civ. App. 26, 20 S. W. 769.

In Harrington v. Mayo, supra, it is said: "One or more of these lots may be devoted to the business of the head of the family, but it must constitute 'a place to exercise the calling or business of the head of the family.' Under this definition of the homestead, that portion which is devoted to the business must constitute a place, that is, one place, at which the business is transacted."

Appellant here insists that the ten tenant houses on lots 1 to 14 are a part of the homestead because the deceased's only business was that of building rent houses, collecting the rents, and using same to support his family. This contention is not sound. There is no pretense that the deceased ever used any one of the tenant houses as *a place* for the conduct of any business. In fact, it does not appear that deceased ever had an office or room at his residence or anywheres else where he exercised his calling or business, but if He had the one house or place where he did so would have been his business home, not the ten rent houses situated on ten different lots.

Moreover, "to preserve the place of business, which is separate and distinct from the home, as a part of the homestead, two things must concur: 1st. The head of a family must have a calling or business to which the property is adapted and reasonably necessary. 2d. Such property must be used as a place to exercise the calling or business of the head of the family." Shryock & Rowland v. Latimer, 57 Tex. 674; Duncan v. Alexander, 83 Tex. 441, 18 S. W. 817; Hinzie v. Moody, 1 Tex. Civ. App. 26, 20 S. W. 769. It cannot

be said that the ten lots and ten houses on them were appropriate or reasonably necessary as a place where deceased might exercise his calling or business. The use made of the premises determines the question of homestead, whether residence or business. The owner of a resident homestead and a business homestead may properly enlarge the building occupied by him in his business, and such enlargement will be exempt; but when the owner of a business home erects another building on the premises, though adjoining his business house, the new building being erected for the purpose of leasing to tenants, such use is inconsistent with its exemption as the place of business, and will form no part of the business home. Hargadene v. Whitfield, 71 Tex. 482, 9 S. W. 475; Nance v. Rucker (Tex. Civ. App.) 294 S. W. 294. Furthermore, we doubt if the building and renting of tenant houses for the purpose of revenue for the support of the family can be said to be a calling or business, such as is contemplated in the Constitution. It seems clear to us that the renting of tenant houses is not the pursuit of a calling within the intent and meaning of the Constitution, nor do we believe that the building and renting of tenant houses for the purpose of deriving revenue with which to support the family is such a business as the Constitution contemplates in exempting a place for the exercise of a calling or business. It has been so held. Lyon v. Files, 50 Tex. Civ. App. 630, 110 S. W. 999; Lauzier v. Industrial Accident Commission, 43 Cal. App. 725, 185 P. 870, 871.

From what has been said, it follows that the judgment of the court below should in all things be affirmed, and it is so ordered.

Affirmed.