## DE GUIRE et ux. v. TITLE REALTY CO. et al.

### No. 13442.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 30, 1936.

Rehearing Denied Nov. 27, 1936.

W. F. Bane, of Dallas, for appellants.

Coke & Coke and Thomas G. Murnane, all of Dallas, for appellees.

BROWN, Justice.

The parties appellant were plaintiffs below and the parties appellees were the defendants. Appellants A. L. De Guire and wife brought suit in the district court of Dallas county to enjoin appellee, Title Realty Company, and the trustee named in the deed of trust, from selling the property in controversy under the provisions of a deed of trust executed by appellants.

Appellees filed an original answer and cross-action, asking for judgment for debt on the note held by it and for foreclosure of its deed of trust lien on appellants' property.

The injunction feature was abandoned, and appellants sought to avoid appellees' cross-action by contending that the property on which the purported lien was given was appellants' business homestead.

At the close of the taking of evidence, appellee Title Realty Company requested a peremptory instruction in its favor. This was refused by the trial court, and the case being tried to a jury, special issues were submitted, which were answered as follows:

1. Was appellant De Guire engaged in the contracting business for others on April 9, 1929? Answer: Yes.

2. Was said appellant actually occupying and using the property described in the deed of trust on April 9, 1929, in the business of a contractor? Answer: Yes.

3. Were the premises described in the deed of trust adapted to the business of contracting for others on April 9, 1929? Answer: Yes.

4. Were the premises described in the deed of trust reasonably necessary to the business of contracting for others on April 9, 1929? Answer: Yes.

5. Was appellant, on April 9, 1929, engaged in the business of selling real estate for others? Answer: Yes.

6. Was appellant actually occupying and using the premises in question in the business of selling real estate for others on April 9, 1929? Answer: Yes.

7. Were the premises in question adapted to the business of selling real estate for others on April 9, 1929?' Answer: Yes.

8. Were the premises in question reasonably necessary to the business of selling real estate for others on April 9, 1929? Answer: No.

9. The reasonable cash market value of the premises in question in August, 1929? Answer: $700.

After receiving this verdict, on motion made by appellee Title Realty Company, the trial court rendered judgment notwithstanding the verdict, and overruled appellants' motion for judgment.

The judgment rendered establishes the debt due by appellants to appellee Title Realty Company, forecloses the deed of trust lien as against the premises in question, and provides that appellants take nothing as to their claim of having a business homestead in the premises. From this judgment the plaintiffs below, who were defendants in the said cross-action, have appealed to the Court of Civil Appeals for the Dallas district and the cause was, by the Supreme Court, transferred to this court.

There are five assignments of error in appellants' brief. They are as follows:

"1. That this cause having been presented to a jury upon special issues and all of such special issues having been answered by the jury and received by the court, the court erred in not rendering judgment in accordance with said verdict.

"2. That the court erred in overruling the motion of A. L. DeGuire for a judgment in his favor in accordance with the verdict, special findings of fact of the jury and agreements of the parties.

"3. That the court erred in sustaining the motion of Title Realty Company for a judgment non obstante veredicto, and in rendering judgment on said motion.

"4. That the evidence being sufficient to sustain the findings of the jury on the special issues submitted to them, the court erred in rendering a judgment non obstante veredicto in favor of Title Realty Company.

"5. There being no pleadings or evidence that the defendant, Title Realty Company, tendered to plaintiffs a release of the deed of trust lien sought to be foreclosed, the court erred in rendering judgment in favor of Title Realty Company for attorneys' fees on the note sued on."

The first four of these five assignments of error are so general that they require propositions to clearly lay before the court the errors asserted. The first proposition is as follows: "The rendition of a judgment non obstante veredicto is proper only when the pleadings and undisputed evidence clearly warrant it and a directed verdict would have been proper. (Germane to Assignments of Error 1, 2, 3 and 4.)"

This is a mere abstraction and does not warrant consideration.

The second proposition, which is, "The holder of a note secured by a deed of trust to recover attorneys' fees provided in the note must, upon making demand for payment, tender to the maker a release of such lien. (Germane to Assignment of Error No. 5)," is subject to the same criticism.

The third proposition is as follows: "It having been alleged by plaintiff, A. L. DeGuire in substance that the property in question was the business homestead of himself and wife, Elizabeth DeGuire, and the evidence being sufficient to raise such an issue and such an issue having been submitted to the jury and answered favorably to the plaintiff, it was error for the Court to enter a judgment non obstante veredicto against plaintiffs."

This proposition will be considered by us, and because the action of the trial court was tantamount to the giving of a peremptory instruction for appellees, we are going to consider assignments of error Nos. 1, 2, 3, and 4.

If we admit, for the purpose of fully discussing the matter, that appellants' pleadings are sufficient to raise the issue of a business homestead on the property in question, nevertheless the record discloses that the evidence does not support such contention. It appears that appellant De Guire was a bricklayer, and that he made some fortunate investments in the Burkburnett oil field prior to 1927; that he returned to Dallas county and purchased and improved

quite a bit of property. He had some vacant property, a portion of which is involved in this suit, and he had some five stores and four or five apartment houses, which required of him considerable clerical work and bookkeeping and time for repairing. On a portion of his vacant property he undertook to build a theater and completed it some time in the year 1927. Before construction began on appellant's theater, he moved a small one-room wooden building on the vacant property, hard-by the proposed theater building, and this structure was, according to his own testimony, used as similar structures are used where buildings are being erected, for the purpose of caring for materials, locking up tools, and a place in which the workmen could change their clothing. The property next to the theater building, on which this small wooden structure stood, was used by all of appellant's tenants who attempted to operate the theater, as a parking lot for the theater patrons, and the leases made from time to time by appellant specifically provided for the use of such vacant property by the patrons. Whenever a lessee of the theater was unable to carry on and it became necessary for appellant to operate the same until he could secure a new lessee, appellant used the property in question as a parking place for his patrons who attended the theater.

After the theater building was completed, the small frame building, which appellant designated as a construction house or an office for the building of the big building, was moved further from the theater building to take care of the fire hazards occasioned by its proximity.

In 1929 appellant sought the loan, out of which this suit grew, and offered to give a lien on this vacant property next to the theater on which there appeared only the small frame building above mentioned. While being questioned on cross-examination concerning what appellant said to the officer of the loan company at the time he was borrowing money on what was discussed as a vacant lot, the following questions were asked appellant and the following answers given:

"Q. But you did not say a word to Mr. Webster when you were borrowing on the lot, that you were going to claim it as an office, did you? A. I did not know anything about an office then, or a business homestead.

"Q. In fact, you did not consider anything about the way you were using it? A. No, I did not think anything about it. When I got ready for it I went down to borrow it and he let me have it."

Appellant admitted that at the time he was using the property in question and making the use of it which he contends constituted it a business homestead, he had certain signs on the building. These signs were as follows: "These Business Lots For Sale"; "Will Build Or Improve."

Being asked concerning his business activities, "What was your business in 1921?" appellant answered: "I was doing some real estate business, selling and doing some building. I contracted and attended to my own stuff, but that's all I have ever done, brick work, I mean contracting and real estate is about all I have done lately except work with the show. The show is the last building I built. Since then I have done no building work at all outside of my own work, and I have so many apartments and stores up there, it keeps me busy on my own stuff."

Appellant admits that in the spring of 1930 he moved the small frame house from the property in controversy and graveled the lot. Explaining his action in so doing, he said: "I was running the show myself and I needed the room for parking space for the show."

Appellant's contentions are that he used this little frame building on this large vacant lot as a place in which he conducted the business of drawing plans and making estimates for other persons and conducting a real estate business.

In order "to preserve the place of business, which is separate and distinct from the home, as a part of the homestead, two things must concur: First, the head of a family must have a calling or business to which the property is adapted and reasonably necessary. Second, such property must be used as a place to exercise the calling or business of the head of the family."

We do not believe that appellant's testimony and the evidence introduced by him can be said to raise these necessary issues. Of all of the authorities quoted in support of the judgment of the trial court in this case, the opinion of Mr. Justice O'Quinn, in the case of Mays v. Mays et al. (Tex.Civ.App.) 43 S.W.(2d) 148 (writ refused) appeals to us as the most forceful digest of the outstanding authorities. If it could be said, by giving the widest range to appellant's testimony and the evidence he adduced, that he ever dedicated this prop-

erty to use as a business homestead, it is apparent that in 1930, when he removed the only building and structure that was situated on this lot and graveled the entire vacant property and used it solely as a parking lot for his theater property adjacent thereto, he has wholly abandoned any use that he may have made theretofore of it as a business homestead.

There is no merit in the contention that appellees could not recover the attorneys' fees provided for in the notes. The cases cited simply hold that where the debtor makes a tender of the debt to the creditor, the creditor having made demand which is unaccompanied by any offer of a release, such tender of the debt due is sufficient to cut off default and the accrual of attorneys' fees. Urbish v. Rutledge (Tex.Civ. App.) 299 S.W. 921; O'Connor v. Kirby Investment Co. (Tex.Civ.App.) 262 S.W. 554, so held. Appellant never at any time tendered to appellee the debt due it.

Finding no error, the judgment of the trial court is affirmed.