**In re Chuck KANG, Debtor.**

**Bankruptcy No. 398–36547–SAF–13.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Feb. 9, 1999.

Greg Gutman, Dallas, TX, for Movants, HKT Management Co. and First International Bank.

Herman A. Lusky, Dallas, TX, for Debtor.

### MEMORANDUM OPINION
### AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

HKT Management Company and First International Bank move the court to dis-

miss this Chapter 13 case and object to the debtor's claim of a business homestead. The court conducted an evidentiary hearing on these matters on December 10, 1998. Following the hearing, the parties engaged in discussions to address the creditors' grounds for dismissal. The debtor, Charles Kang, has informed the court that he intends to file an amended Chapter 13 plan addressing the disclosure and disposable income issues raised by the creditors. In turn, the movants have requested that the court carry the motion to dismiss until a confirmation hearing.

■ Indeed, the court intimated that a confirmation hearing afforded the best means to test the debtor's good faith approach to this case. A Chapter 13 plan provides the debtor with a vehicle to remedy problems, even if created by the debtor as late as the filing of the schedules. Under 11 U.S.C. § 1325(a)(3), to be confirmed, a Chapter 13 plan must be proposed in good faith. To test the debtor's good faith, the court considers the totality of the circumstances. *See In re Chaffin,* 836 F.2d 215, 217 (5th Cir.1988). The issues raised by the movants may be addressed by Kang in his plan.

For example, a plan that pays creditors in full or substantially in full will remedy the problems raised by the movants. Kang has now increased his plan, in response to the issues presented by the motion to dismiss, to approximately $75,000, to be paid over 60 months. After payment of administrative expenses, Kang estimates that the amended plan will result in about $71,000 of that amount being distributed to unsecured creditors, including the movants.

In addition, as the court will address below, Kang owns a strip shopping center, in which he may have considerable equity. Whether exempt or not as a business homestead, committing that equity to his plan will assure that creditors will receive a substantial dividend, depending on the outcome of the claims allowance process. Thus, once the claims allowance process

has been completed, which should coincide with confirmation, Kang may commit to sell the shopping center in the final year of his plan if the equity is needed to complete a plan paying creditors a substantial dividend.

■ So, with the motion to dismiss being carried to the confirmation hearing, the court turns to the exemption objection. The determination of property exempt from a bankruptcy estate constitutes a core matter over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2) and 1334. This memorandum opinion contains the court's findings of fact and conclusions of law. Bankruptcy Rules 7052 and 9014.

Kang owns a strip shopping center. He estimates that the equity value of his interest would be about $100,000. In the center, Kang operates a grocery or convenience store. He leased space in the center to operate a business prior to purchasing the center. He testified that he purchased the center to protect his business location. His father had also operated a business in the center. Kang personally performs maintenance and upkeep to the center. He collects the rents from the other tenants. Kang has claimed this property as a business homestead. The movants object, contending that the property is an investment and not a place of business for Kang.

■ Section 522(b) of the Bankruptcy Code permits a debtor to exempt property under either the federal exemptions enumerated in § 522(d), if the state authorized, or those available under state or other federal law. Texas has authorized debtors to select the federal exemptions under § 522(b)(1). And Texas has created its own list of exemptions. *NCNB v. Volpe (In re Volpe),* 943 F.2d 1451, 1452 (5th Cir.1991). Accordingly, Kang could elect the "federal" exemptions specified in § 522(d) or the "state" exemptions under § 522(b)(2). Kang has claimed the Texas exemptions.

■ The Texas exemptions recognize a business homestead. V.T.C.A. Property Code § 41.001. As Fifth Circuit Chief Judge King has written:

> The test under Texas law for whether property qualifies as a business homestead is a familiar one: 'To preserve a place of business which is separate and distinct from the home as a part of the homestead, the head of the family must have a calling or business to which the property is adapted and reasonably necessary and such property must be used as a place to exercise the calling or business of the head of the family.'

*In re Starns*, 52 B.R. 405, 414 (S.D.Tex. 1985) (King, Circuit Judge, nee Randall presiding). Although Texas homestead exemption laws must be liberally construed in favor of the debtor, the scope of the business exemption cannot be extended to protect property which is only incidentally useful or profitable to the business. *Id.* Thus, the court must determine if the head of the family has a calling or business to which the property is adapted and reasonably necessary and, then, if the property is actually used as the place to exercise that calling or business. *Mays v. Mays*, 43 S.W.2d 148, 152 (Tex.Civ.App.—Beaumont 1931, writ ref'd).

■ Kang is the head of the family. He has a business, the ownership and operation of a grocery store, more aptly described as a convenience store. Although Kang has tried other businesses, as evidenced by the movants' claims in this case, at the time of the filing of his bankruptcy petition, the store occupied his time, labor and efforts as its owner. His wife assists him, but Texas public policy encourages family efforts to improve their economic lot. Kang, even with his wife, owns or operates the store. That qualifies as a business. *C.D. Shamburger Lumber Co. v. Delavan*, 106 S.W.2d 351, 356 (Tex.Civ. App.—Amarillo 1937, writ ref'd).

The center is adapted for use as a convenience store. Center space is reasonably necessary for the store. A portion of the center is actually used as a location for the store, owned or operated by Kang, the head of the family. Thus, the business homestead test has been met.

But the movants contend, correctly, that only a portion of the center is used for the store. Since the store could be leased, as Kang did prior to purchasing the center, or located elsewhere, and since Kang derives rental income from other center tenants, the movants contend that the center should be held to be a non-exempt investment.

■ Texas cases recognize that the building and renting of houses do not meet the definition of "business" as used in the Texas Constitution. *Shamburger*, 106 S.W.2d at 356–57; *Mays*, 43 S.W.2d at 152. A person could own many rent houses and yet devote his business hours, time, labor and attention to other businesses. Rather than constitute a business homestead, the building and renting of houses amounts to an investment. *Shamburger*, 106 S.W.2d at 357. By analogy, owning a shopping center is similar to owning rent houses. Had Kang merely purchased the shopping center, maintained it, leased space to tenants and collected rents, Texas case precedent defining a business would not recognize the center as a business homestead.

Kang, however, uses a portion of the center for his business. He actually operated a convenience store at that location at the time of the filing of his bankruptcy case. While the center has investment value for Kang, he uses part of the center for his convenience store business. Thus, Kang's use of the center is different than a person who builds or rents commercial space without maintaining a business on the premises.

Texas cases recognize that a person in the business of operating a tourist camp who owns a gasoline station and 20 cabins could exempt the entire property as a business homestead. *Shamburger*, 106 S.W.2d at 358. But the business of operating a tourist camp requires multiple facilities.

Similarly, a miller who owns a mill yard with camp houses and outhouses necessary for customer lodging could exempt the entire property as a business homestead. *Id.*, at 357–358. But Kang's business of operating a grocery or convenience store only requires the store's premises and customer parking facilities. The business does not require the entire center.

Kang's store occupies a portion of the center. The space it occupies is essential and necessary for the business. *Compare Starns*, 52 B.R. at 414. But Kang's use of the remainder of the center is only incidental to Kang's primary business. If the center could be separated, part would be essential and necessary for Kang's business, and part, incidental. If on separate lots, Texas law would recognize only the store location as a business homestead. *Id.*

 "The use made of the premises determines the question of homestead." *Mays*, 43 S.W.2d at 152. The owner of a business homestead may enlarge the building occupied by him in his business, with the enlarged building being exempt. "[B]ut when the owner of a business ... erects another building on the premises, though adjoining his business house, the new building being erected for the purpose of leasing to tenants, such use is inconsistent with its exemption as the place of business, and will form no part of the business home." *Id.* Thus, had Kang owned a store and later constructed a shopping center around it, the center would not be exempt. The court cannot discern a public policy difference when Kang purchases the center containing his store.

Prior to *Mays* and *Shamburger*, several Texas cases allowed debtors to exempt an entire building or an entire parcel of land when only a portion had been used for the business. For example, in *Cooper Grocery Co. v. Peter*, 35 Tex.Civ.App. 49, 80 S.W. 108 (1904, writ ref'd), the court allowed a business homestead claimant to exempt a building which he leased to another, but

continued to occupy an office therein. The claimant had a grocery business. He sold out his stock of merchandise and thereafter rented the property on a month to month basis. He maintained an office in the building for the purpose of buying cotton and taking orders for tailor-made clothing, a business he started prior to selling out his grocery merchandise. Acknowledging that the record presented a "close question of fact," the court found that the evidence did not warrant a finding that the claimant was not actually engaged in the business of buying cotton and taking orders for clothing and that he was therefore not using the premises in question for that purpose. *See also, e.g., Brennan v. Fuller*, 14 Tex.Civ.App. 509, 37 S.W. 641 (1896, no writ history) (business homestead not abandoned by owner of one-story brick building who rented majority of building to another but reserved an office from which he maintained his business as postmaster).

 But these cases predate and are therefore affected by *Mays* and *Shamburger*. Both *Mays* and *Shamburger* recognize that owning and renting space does not, *per se*, constitute a business or calling for homestead purposes. Instead, the court must focus on the use made of the premises and determine whether it is reasonably necessary for the operation of a business recognized for homestead purposes or only incidental to the operation.

 Based on the analysis of Texas law, Kang may exempt as his business homestead his store with necessary space for ingress and egress and customer parking. But the remainder of the property is incidental to his business, and is in the nature of an investment not considered a business under Texas law and may not be included in the business homestead.

 In Texas, in the case of an urban residence located on more than one acre of land, the excess property would be subject to creditors' claims. The debtor

may designate the acre for his homestead. *Niland v. Deason,* 825 F.2d 801, 815 (5th Cir.1987); Tex. Prop.Code Ann. § 41.022 (West 1999). The excess acreage over the debtor's homestead may then be sold to satisfy the claims of creditors. *Id.* Tex. Prop.Code Ann. § 41.024 (West 1999). This court has found no Texas authority that would not make that principal applicable to the debtor's property in excess of a business homestead. The court appreciates that the store cannot be physically separated from the rest of the center but that does not mean that the title to the excess property cannot be conveyed. If, however, title to the excess property cannot be conveyed because of applicable non-bankruptcy law, Texas law permits the sale of the property, with a portion of the proceeds allocated to the homestead and a portion to the excess. *See,* McSwain "The Texas Business Homestead in 1990," 42 Baylor L.Rev. 657, 673–74 (1990).

Unless the debtor commits to selling the property if necessary to confirm a Chapter 13 plan, the debtor must designate the portion of his property primarily used and reasonably necessary for his store. That portion will be recognized as his business homestead. The excess property shall be available for creditors' claims. The debtor shall file his designation within 60 days of the date of entry of this order. Parties in interest shall have 30 days to object to the designation. In the absence of an objection, the designation shall be recognized as the business homestead. In the event of an objection, the court will conduct a further evidentiary hearing to determine the exemption.

The court appreciates that a forced sale of the excess property may adversely affect the value of the property. *See e.g. In re Tinsley,* 217 B.R. 188 (Bankr.N.D.Tex. 1997). Actual use of the property, not impact on market value, however, informs the business homestead determination.

This decision recognizes the Texas constitutional policy to protect a debtor's business homestead without impairing the legitimate claims of creditors to that portion of the debtor's property not primarily used or reasonably necessary for that business. Permitting the debtor to exempt the entire strip shopping center would lead inevitably to exemptions for multistory commercial buildings and hotels owned by debtors who operate a small retail operation qualifying as a business for Texas homestead purposes on the premises. That would undermine the Texas decisions that exclude building and leasing property from a business for business homestead purposes and result in an unseemly windfall for debtors.

Based on the foregoing,

**IT IS ORDERED** that the objection to the business homestead is **OVERRULED** in part and **SUSTAINED** in part and the homestead is **ALLOWED** as provided in the above memorandum opinion.

**IT IS FURTHER ORDERED** that the motion to dismiss is carried to the hearing on the confirmation of the debtor's Chapter 13 plan of reorganization.