to notice and suit were certainly effective and binding.

It seems plain to the court that, as a result of the failure of the libelant to file claim, as provided in the bills of lading, and the failure to bring suit for nearly two years after the loss, the respondent carrier was deprived of the opportunity to examine the goods at Rotterdam, and the holding of a survey on its own account.

My view of this case is against the libelant, for failure to give notice and bring suit, as provided by the bills of lading. It is therefore unnecessary to discuss the many other and very interesting defenses urged by the respondents.

I am of the opinion that the libels must be dismissed, and an order may be prepared accordingly.

## In re PAGEL ELECTRIC & ICE CO.

(District Court, S. D. Texas, at Houston. January 4, 1926.)

No. 1078.

1. Bankruptcy ⟨⟩396(5)—Bankrupt held entitled to exemption of residence homestead without reference to claim of business homestead.

A Texas bankrupt is entitled to exemption of a residence homestead, without reference to any claim made by him to exemption of a separate business homestead.

2. Bankruptcy ⟨⟩396(5)—Electric light plant, owned and used jointly by bankrupts, held exempt as business homestead (Rev. St. Tex. 1911, art. 3785).

Three men, who were mechanics and machinists and each the head of a family, jointly purchased an electric light and ice plant, in which each thereafter exercised his calling. The lots on which the plant was located and which were used in its operation did not exceed in value $5,000, aside from the improvements thereon. Held that, under Rev. St. Tex. 1911, art. 3785, on their bankruptcy, they were entitled to exemption of the plant as their business homestead.

3. Bankruptcy ⟨⟩396(5)—That the business homestead of bankrupts was used as a public utility under a municipal franchise held not to affect their right to exemption.

That bankrupts used the plant as a public utility under a municipal franchise in connection with poles and wires in the streets for distribution of electricity to inhabitants of the town did not affect their right to exemption of the plant as their business homestead.

In Bankruptcy. In the matter of the Pagel Electric & Ice Company, Charles Herman Pagel, Frank August Pagel, Jr., and Louis Albert Pagel, bankrupts. On review of order of referee. Affirmed.

The following is the opinion of Referee Hume:

"In this matter in due order there came on to be heard the application of the bankrupts to have set apart to them, as their exempt property, the specific articles respectively claimed by the bankrupts as the exemption to which they were entitled under the law as exempt personal property, exempt tools of their trade, and their exempt homestead. There also came on for consideration the exceptions to the allowance and setting apart of said exemptions, as filed by the creditor. The facts in this case are few and rather simple, and the referee finds that, as to the personal property exemptions, the bankrupts are entitled to have and receive them as claimed, and so directs that they be released and set apart to them, respectively, as claimed in the schedule.

[1] "As to the claim of Frank August Pagel, Jr., of lots 5, 6, 7, and 8, in block 42, of the town of Yoakum, Tex., as his residence homestead, the referee finds that he is entitled to the same for the purposes of a home, without reference to and in addition to any claim of right that he may have to any place or property used as a place to exercise the calling or business as head of a family, and it is accordingly ordered that the same be set apart to him as such residence homestead. In re Eikel (D. C.) 283 F. 285; Pryor v. Stone, 19 Tex. 371, 70 Am. Dec. 341; Waggener v. Haskell, 89 Tex. 435, 35 S. W. 1; Harrington v. Mayo, 61 Tex. Civ. App. 610, 130 S. W. 650; Rock Island Plow Co. v. Alten, 102 Tex. 366, 116 S. W. 1144.

[2] "The bankrupts claim as exempt to them lots 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30, in block 27, of the city of Schulenburg, Fayette county, Tex., together with the electric light plant, ice plant, and the pumping plant, including all machinery, of every kind and character and nature, now situated on said tract of land, together with all wires, poles, tools, apparatus, and equipment necessary and used in the operation of said plants, or in any manner belonging or appertaining thereto, as being their homestead in the town of Schulenburg, consisting of lots not exceeding in value $5,000 at the time of their designation as a homestead, without reference to the value of any improvements thereon, dedicated and used by them for the purposes of a home, or a

place to exercise their calling or business as the heads of their families.

"The referee finds that on May 9, 1922, Charles Herman Pagel, Frank A. Pagel, Jr., and L. A. Pagel were respectively the heads of their families; that they were machinists and mechanics, and exercised as their calling or business as the heads of their families, the conduct, management, and operation of an electric light and ice company in the town of Schulenburg, Tex.; that they were not then engaged as partners; that on May 9, 1922, for the purpose of carrying on their calling, trade, and business as the heads of their families, they purchased as joint owners, or owners in common, all of the above-described lots, on which there was then located and in operation the electric light and ice plant, battery service plant, pumping plant, and all machinery, houses, tools, apparatus, and equipment used in the operation of said plants; that each and all of said lots were used in the operation of said plants and to care for said plants and their equipment, and that said plant was further composed of poles, wires, cross-arms, and insulators and other devices necessary to transmit and deliver therefrom the electric current over the streets of the town of Schulenburg; that at the time of said purchase Charles Herman Pagel, Frank A. Pagel, Jr., and L. A. Pagel, were solvent persons, and that they immediately engaged in the conduct of said business upon said lots as a place to exercise their calling or business as the heads of their families; that at said time said lots did not exceed in value $5,000, without reference to the value of the improvements thereon.

"The referee finds that about two weeks after the purchase of said property, and after said property was used by the purchasers as joint owners for the purpose of and as a place to exercise their calling or business as the heads of their families, they began to use the name of 'Pagel Electric & Ice Company' to designate the same, and that at all times since they have so continued to use said property for such purposes, and at no time since have they had any other place to exercise or carry on their calling or business, and that they have never since followed any other trade or occupation. The referee finds that the fact that the personal property claimed by the bankrupts as exempt to them may have consisted in part of property which they owned as partners, or as joint owners, would not affect their right to claim such as exemptions,

but that such property was exempt to them under the provisions of article 3785 title 55 of the Revised Civil Statutes of 1911. This rule is supported by the case of St. Louis Type Foundry Co. v. International Live Stock Printing & Publishing Co., 74 Tex. 651, 12 S. W. 842, 15 Am. St. Rep. 870, as also by the case of Willis v. Morris, 66 Tex. 628, 1 S. W. 799, 59 Am. Rep. 634, wherein the Supreme Court held that the tools of their trade were exempt to partners, and the fact that they employed mechanics using large and expensive machinery did not deprive them of the homestead exemption to the place of their business and the necessary machinery annexed to the freehold.

"The referee concludes that the lots mentioned constituted the homestead of the respective claimants, consisting of lots not exceeding in value $5,000 at the time of their designation, and used as a place to exercise their calling or business as the heads of their families, and that the fact that they owned the property jointly, or as partners, did no deprive them of the right to claim and hold said property exempt as their business homestead. The right of partners, or joint owners, to claim their homestead being jointly owned, or partnership property, is well established in Texas. The rule in Texas is laid down and distinguished in 4 American Law Reports, at pages 335 to 339, and the doctrine is announced and sustained in the case of Swearingen and Garrett v. Bassett, 65 Tex. 267. It is also upheld in the case of Gordon v. McCall, 20 Tex. Civ. App. 283, 48 S. W. 1111. The exemptions of homesteads taken out of jointly owned or partnership property, have been held in the cases of Williams v. Meyer (Tex. Civ. App.) 64 S. W. 66, and Allen v. Meyer (Tex. Civ. App.) 65 S. W. 645; also the cases of Willis v. Morris, 66 Tex. 628, 1 S. W. 799, 59 Am. Rep. 634; Clements v. Lacy, 51 Tex. 151; also see 29 Corpus Juris, 851, 852, § 178, 29 Corpus Juris, 810, § 61, and Ruling Case Law, § 36.

"The referee concludes that the occupation of the property in question by the respective joint owners, or partners, was a joint and concurrent occupation of the property; that it was an open and visible dedication and appropriation of it to their uses as a place to exercise their calling or business as the heads of their families; that it was such an actual occupation and dedication, continuous and uninterrupted, and that it served to put all persons upon notice

that, from the moment of its acquisition, the property became and was impressed with such homestead characteristics as thenceforth withdrew it from liability for debt, and made it exempt to its owners who had so dedicated, appropriated and used it; and that under the law of this state the claimants should have said lots set apart as being exempt to them as their homestead.

[3] "The referee has given attention to the contention that the property claimed as a business homestead was used in connection with the municipal franchise serving as a public utility through the use of poles, wires, and other property distributing electricity to citizens over the streets and ways of the town and public roads, and the referee concludes that the use of the property in connection with the franchise cannot affect its homestead qualities and characteristics or its exemption features. The franchise rights cannot be controlled by the exemption statute, or by the bankruptcy court, and are dependent entirely upon the will of the municipality and such contracts as the owners of the exemption property may carry out with the municipality, and, in the absence of any authority holding that the existence of the franchise or the public utility can have the effect of depriving the claimants of their lawful exemptions, the referee is unwilling to hold that they will have that effect in this case.

"It is therefore accordingly ordered that the trustee shall set apart the personal property and the real estate claimed as exempt by the bankrupts."

Boyles, Brown & Scott, of Houston, Tex., and Marcus Schwartz, of Hallettsville, Tex., for bankrupt.

HUTCHESON, District Judge. The opinion and order of the referee in the above-styled matter having been carefully considered by me, and they appearing correct, the same are in all things affirmed.

---

**WILSON v. BOWERS, Collector of Internal Revenue.**

(District Court S. D. New York. January 14, 1924.)

**1. Courts ⬅262(4)—Federal District Court held to have jurisdiction to enjoin collector of internal revenue from refusing to honor application for withdrawal of denatured alcohol.**

Federal District Court, though without general power of mandamus, *held* to have jurisdiction to enjoin collector of internal revenue

from refusing to honor application for withdrawal of specially denatured alcohol while basic permit of applicant remained unrevoked.

**2. Courts ⬅265.**

Federal District Court, in absence of statute, has no general power of mandamus.

**3. Courts ⬅262(4).**

As affecting jurisdiction of federal court, there is a distinction between an application for mandamus requiring an officer in general to take certain action and an injunction restraining his refusal on some particular ground.

**4. Injunction ⬅114(3)—Commissioner of Internal Revenue and Prohibition Commissioner held not necessary parties to injunction suit against collector of internal revenue.**

Commissioner of Internal Revenue and Prohibition Commissioner *held* not necessary parties to suit to enjoin collector of internal revenue from refusing to honor application for withdrawals of specially denatured alcohol while applicant's basic permit remained unrevoked.

**5. Intoxicating liquors ⬅106(1)—Pendency of proceeding to revoke basic permit does not temporarily revoke it (Comp. St. § 10138½dd).**

Under National Prohibition Act, tit. 2, § 9 (Comp. St. § 10138½dd), basic permit to use specially denatured alcohol is not temporarily revoked by pendency of proceeding before Commissioner of Internal Revenue to revoke permit.

In Equity. Suit by William Wilson, doing business under the trade-name of the Wilson Specialty Company, against Frank K. Bowers, Collector of Internal Revenue. Decree for complainant.

Siegel & Corn, of New York City (Jacob H. Corn and Isaac Siegel, both of New York City, of counsel), for complainant.

William Hayward, U. S. Atty., of New York City (Francis A. McGurk, Asst. U. S. Atty., of New York City, of counsel), for defendant.

AUGUSTUS N. HAND, District Judge. This suit is brought to procure a final decree restraining the defendant, the collector of internal revenue, from refusing to honor complainant's application for withdrawals of specially denatured alcohol for which he has a basic permit granted under the Volstead Act (Comp. St. § 10138¼ et seq.). This permit was granted by the collection after the application and bond were approved by the Commissioner.

The motion before the court is for a preliminary injunction to restrain the defendant from refusing to honor applications for withdrawals, upon the ground that, so long as the basic permit is in force and officially unrevoked, no power exists to suspend the