**YATES et ux. v. HOME BUILDING & LOAN CO.**

No. 3065.

Court of Civil Appeals of Texas. Beaumont.

April 4, 1937.

Rehearing Denied April 7, 1937.

A. L. Shaw, of Beaumont, for appellants.

Gordon, Lawhon, Sharfstein & Bell, of Beaumont, for appellee.

O'QUINN, Justice.

Suit by appellee, Home Building & Loan Company, against appellants to recover on a note and for foreclosure of deed of trust lien and mechanic's lien on certain property. Judgment was for appellee.

The pleadings are long and somewhat involved, and we will not undertake to set them out, even in substance, but will say that each party has pleaded every con-. ceivable phase that could be applicable to the matter at issue. We will say, however, that appellants pleaded a general denial, and that Mrs. Yates pleaded her coverture, and that the plea of homestead was interposed against the debt and foreclosure of the asserted liens.

There are 28 assignments of error, all urged, answered by appropriate counter assignments and propositions. For sake of brevity, we shall not discuss these assignments and counter assignments as they appear, but only the matters deemed by us necessary to a determination of the appeal.

On April 4, 1930, and prior thereto, R. H. Yates and his wife, Mrs. Sarah Bertell Yates, occupied lot 16 in block 52 of the Averill addition to the city of Beaumont, Tex., as their homestead. The lot was the separate property of Mrs. Yates.

On January 31, 1930, they (the Yates) entered into a contract with T. C. Wise to erect on the back end (north end) of this lot an eight-room, two-story stucco building, and executed a note in the sum of $3,500 payable in installments of $42 per month, to the order of said T. C. Wise, at Beaumont, Tex., which note recited that it was given in payment for labor and material to be furnished by the said T. C. Wise in the erection of said house, and which note created, included, and retained a mechanic's and materialman's lien on said lot 16 to secure the payment of said note. This note and lien was duly acknowledged and recorded in the Mortgage and Lien Records of Jefferson County. Under this contract and in accordance with the provisions of said note and lien, Wise, the contractor, erected said house. On April 4, 1930, Wise indorsed and in writing transferred and assigned said $3,500 note and lien to the Home Building & Loan Company, appellee, which assignment of said note and lien was placed of record on April 9, 1930. On the same day that appellants, Mr. and Mrs. Yates, executed the mechanic's lien note (January 31, 1930) payble to Wise, contractor, in consideration for his building the house mentioned, they, R. H. Yates and his wife, Mrs. Sarah Bertell Yates, executed and delivered to Wm. Wahrmund a deed of trust on said lot 16, block 52 in the Averill addition to the city of Beaumont, the property here in question, to secure the payment of said $3,500 note by them given to T. C. Wise in payment for labor and material by him used in the erection of the building situated on said lot before mentioned. This instrument contained the usual provisions of such instruments, and among others provided that appellants would keep all taxes on said premises paid as they fell due, and if they should fail to do so, authorized appellee to pay same and hold such taxes by it paid, as a charge against the property with the tax lien therefor. Under this provision appellee paid the sum of $364.34 taxes for the years 1931, 1932, 1933, and 1934, totaling said sum, which appellants had failed to pay.

As before stated, lot 16, block 52, was the separate property of Mrs. Yates. For years she and her husband, R. H. Yates, had resided in a house situated on the south end of the lot, as their home, and so resided at the time of the execution of the building contract entered into with T. C. Wise for the erection of the house on

the north end of the lot, and when the note and mechanic's and materialmen's lien on said lot were executed, and when the deed of trust given to better secure the payment of the note was executed and by Wise assigned to appellee, and since. That appellee paid $3,500 for the note and liens to Wise is not disputed, and it is likewise not disputed that the Yates got the benefit of same in the payment for said building. It further appears without dispute that when said building was complete appellants rented same and have since continuously rented same.

The case was tried to a jury, but when the evidence was closed defendants, appellants, asked for an instructed verdict in their favor which was refused. Plaintiff, appellee, also moved the court for an instructed verdict in its favor for the amount of its debt, and for foreclosure of its liens on said lot 16 which was refused, and the court then, on his own motion, instructed the jury to return a verdict for plaintiff for its debt, and foreclosure of its said lien upon the north portion of said lot on which said building was situated, that is the north end of the lot extending to one foot south of the south line of said building, including the two story building, which verdict was returned, and judgment was entered for plaintiff against R. H. Yates and Sarah Bertell Yates, his wife, jointly and severally, for $4,695.16, being $4,268.33, principal and interest to that date, and $426.83 for attorney's fees, with interest on the amount of the judgment from the date of the judgment at the rate of 8.4 per cent. per annum. The judgment ordered foreclosed the asserted lien upon the north portion of said lot consisting of 50 by 65 feet—that is, 50 feet wide on the north end and extending south 65 feet, including the house in controversy. This appeal followed.

Appellants' assignments urging that the court erred in refusing their motion for an instructed verdict in their favor are overruled. It is insisted that the instructed verdict should have been given because:

(a) Appellants filed a sworn plea of non est factum against the alleged execution by them of the $3,500 note and the mechanic's and materialmen's lien, and that sufficient proof of such execution had not been made. There was no special verification of the denial of the execution of the note and mechanic's and materialmen's lien, but at the end of appellant's

answer, after the prayer, there was the following:

"State of Texas, County of Jefferson

"We, R. H. Yates, and wife, Sarah Bertell Yates, defendants in the above styled and numbered cause, state upon their oath that the material allegations in the above and foregoing answer are true.

"R. H. Yates
"Sarah Bertell Yates

"Sworn to and subscribed to before me this the 2nd. day of December, A. D. 1935. [Seal] L. A. Baker, Notary Public in and for Jefferson County, Texas."

■■ It is not believed that the foregoing shows that the denial of the execution of the note and lien was verified as required by statute. It does not point to denial of any specific thing, but says that the *"material allegations"* of the answer are true. We think that for a non est factum plea to be properly verified it should be pointedly and directly stated that the instrument in question was not executed by the party denying its execution, nor by any one authorized to execute same. It is believed that the pleading fails to show proper verified plea of non est factum. But if so, then we say that the evidence sufficiently shows the execution of the challenged instruments by appellees.

In a supplemental answer appellants again denied that the note and lien was signed by them, or either of them, or by any person authorized by them. This plea was verified as follows: "I, R. H. Yates solemnly swear that I am one of the defendants in the above styled and numbered cause, and that the matter stated in paragraph seven of the above and foregoing plea are true." This was signed and sworn to by R. H. Yates. Paragraph 7 contained the denial of the execution of the note and lien by appellants or either of them, or by any one authorized to do so. It will be noticed that R. H. Yates, only, verified the plea. We again say that the evidence sufficiently shows the execution of the note and lien by each of the appellants.

■ In fact, appellants in their pleading admit that they executed said lien for in that they allege: " * * * that if there was ever signed and acknowledged said mechanic's lien contract, bearing date of January 31, 1930, as alleged by plaintiff, which is not admitted but is denied by defendants, it was procured by mis-

**1084**

representations of plaintiff, its officers, agents, and employees, by representing that said mechanic's lien contract was a deed of trust to plaintiff, and had it not been for such false misrepresentations, *they would have never signed said instrument,* there being at no time such a contract made, and entered into by and between the defendants and the said T. C. Wise, said T. C. Wise at no time contracted to construct the said building for the said defendants." So, by their own admissions they actually signed the instruments. That Wise contracted to build the house, that he did build it, that appellee furnished the money, $3,500, and paid same to Wise for the note and lien, are all without dispute.

■ The deed of trust against which, as we understand appellants' pleadings, there was no plea of non est factum, contains this recital: "This note is given in aid but not in cancellation of a first and superior mechanic's lien note for $3500.00, executed by us payable to the order of T. C. Wise, on January 31, 1930, such note payable in monthly installments of $42.00 each, on or before the third Saturday of each month hereafter, bearing interest at the rate of 8.4% per annum from its date until paid, the interest being included in such monthly payments, and which note constitutes and is secured to be paid by mechanic's, materialmen's, laborer's and contractor's lien on the hereinafter described property, executed by us to T. C. Wise on January 31, 1930, recorded in Volume 250, page 487, of the Mortgage and Lien Records for Jefferson County, Texas, which sets (said note) and superior lien is now owned and held by the Home Building & Loan Company." This instrument admits the execution of the note and the mechanic's and materialmen's lien that appellants *now* say they did not execute.

(b) That the evidence was insufficient to show ownership in appellee of the note and lien in controversy. As we understand the evidence, there was no question of ownership involved, but if so, the evidence, we think without dispute, shows that appellee was a purchaser for value of the note and lien, and the holder of same.

■ (c) That lot 16 was the homestead of appellants prior to and at the time of the execution of the note and lien, and at all times since, and no valid lien being shown, the judgment against them for the debt and for foreclosure of the

lien, was error. As stated, the property was the separate property of Mrs. Yates, and appellants for years had been and were at the time of the execution of the instruments herein involved and of the erection of the building alleged, residing in a house on the south end of lot 16. It was their homestead. The purpose of the execution of the note was to get money with which to build an eight-room, two-story stucco house on the north end of the lot. The mechanic's lien was given to secure the payment of the note. It clearly appears that none of the money was used to improve the house on the south end, the residence in which they lived, so, under the law, the lien was enforcible only against the new building and that part of the lot it occupied. The evidence shows without dispute that when the new house (on the north end of the lot) was completed, appellants did not occupy it as a home, but rented it to tenants, and that same has not at any time been occupied by appellants, but that it has been for nearly five years continuously rented. But appellants each testified that it was their intention to build the house for their home and that they all the time intended to use it for their home. When asked why, if that was their intention, they did not move into it when it was completed, they said that they rented it for the purpose of getting money with which to pay the debt they had incurred for its erection, and that when that was paid they would then use it as their home. Undoubtedly it is the law that a temporary renting of the home does not destroy the homestead rights of the owner, nor will it work an abandonment of the homestead. But here the debt was incurred January 31, 1930. It was to be paid in installments of $42 per month. This suit was filed in the early part of 1935. At that time they had paid only the sum of $473.12 on principal and interest. They had failed to pay taxes for four years in the sum of $364.34, which appellee for its own protection, under the contract in the deed of trust, had to and did pay, thus practically offsetting the amount paid by appellants. So that there was a balance due on the note, including taxes and interest, of $4,086.15. The debt was increasing instead of decreasing at the end of nearly five years. The house was still being rented, but appellants still claimed they intended to use it as their home. Homestead rights in a house cannot be acquired by mere intention, but to

effectuate the intent actual use of the property as a home must concur. They testified that they intended to vacate their old home (house on south end of lot) and to make the new house their home. Yet, all the time for nearly five years, they continued to occupy the old home, and to rent the new house. The old home continued to be their home for homestead rights cannot be acquired by mere intention, but actual use, as such, must evidence the intention.

We think it clear that the continuous renting of the property, under the circumstances and for the length of time, as a matter of law, showed an abandonment of the property as for homestead purposes. The mere fact of their intention *at some time in the future* to make the new house their home was not sufficient to impress it with present homestead rights as against their creditors. Sharp v. Johnston (Tex.Sup.) 19 S.W. 259; Clem Lumber Co. v. Elliott Lumber Co. (Tex.Com.App.) 254 S.W. 935; Staten v. Harris (Tex.Civ.App.) 239 S.W. 334 (writ refused); Bayless v. Guthrie (Tex. Com.App.) 235 S.W. 843; Pierce v. Langston (Tex.Civ.App.) 193 S.W. 745; Neece v. King (Tex.Civ.App.) 73 S.W.(2d) 550; Karr v. Cockerham (Tex.Civ.App.) 71 S.W. (2d) 905; Wilson v. Levy (Tex.Civ.App.) 13 S.W.(2d) 971; Archibald v. Jacobs, 69 Tex. 248, 6 S.W. 177; Jefferson County Investment & Building Ass'n v. Gaddy (Tex. Civ.App.) 90 S.W.(2d) 295. The use made of premises determines the question of homestead. The owner of a residence homestead may properly enlarge his building or buildings constituting his home and the homestead right still exists, but when he erects another house, though on the same lot, and uses the second house for purposes other than homestead, that portion of the homestead lot ceases to be a part of the homestead, because it was not then being used for any homestead purpose Blum v. Rogers, 78 Tex 530, 15 S.W. 115; Mays v. Mays (Tex.Civ.App.) 43 S.W.(2d) 148, 151 (writ refused).

In Mays v. Mays, supra, Mays had his home and lived on lot No. 1. He erected a house on the back end of the lot (No. 1) and rented it using the rents for general purposes. He claimed the whole of lot No. 1 and the rent house as his Homestead. It was held: "When Mays erected the tenant house on a portion of lot No. 1, and then rented the tenant house, collecting the rent and using it to support the family, that portion of lot No. 1 ceased to be a part of the homestead. It was not then being used for any homestead purpose." (Writ was denied.)

We overrule the assignments urging error in the court's refusing to submit the case to the jury. As we view the record, the facts necessary to a recovery by appellee were without dispute, and it is well settled that undisputed facts do not have to be submitted to a jury for a finding of such facts. That appellants contracted with Wise to erect the building and that he did erect same are not disputed. While appellants attempt to deny that they executed the mechanic's and materialman's lien note for $3,500 payable to Wise for the labor and material furnished by him in the building of the house, yet their own testimony, as we view it, shows their execution of the note and lien. Their pleadings, hereinbefore set out, also admit the execution of the note. The execution of the deed of trust to secure the payment of the note is not denied. The deed of trust contained a copy of the note. That Wise assigned the note and lien to appellee, and that appellee paid Wise the amount of the note, $3,500, and that Wise used the money in building the house, all with the knowledge of appellants, is without dispute. That appellants not only recognized all these facts and obligations, but accepted the benefits of the Wise contract, and the funds realized from the assignment of the note and lien by Wise to appellee, is shown by their making payments on the note for a time in the sum of more than $400, taking charge of the house and renting same, and utilizing the benefit of its income for their personal use. This being true, as we construe the record, appellants cannot be heard to deny their liability on the note.

Several assignments assert that the court erred in refusing to submit the case to the jury and in instructing the verdict because:

(a) It is insisted no valid lien against lot 16, on which their home was situated and upon which the new house was erected, was shown, and so the judgment of foreclosure was error. We have already held that the evidence shows that the note and lien were executed by appellants, and so this contention fails.

(b) That the north portion of lot 16 upon which the new house was erected, being situated on the homestead, and no abandonment of the portion on which the house was erected being shown, the lien could not be foreclosed on same. This contention is not sound. It is true that the new house was built on the north 65 feet of the home lot, but when it was completed appellants did not occupy it as their home, but immediately rented it and collected the rents and used same for general living purposes, and continued to rent the house right down to the filing of this suit, some five years after it was completed. It is argued that appellants built the house for their home, and that they at all times intended to use it as such, and so it was their home. As before stated, they explain why they never occupied it as their home by saying that they rented the house to get money with which to pay the note, and that when the debt was paid then they intended to occupy the house as their home. For many years before the erection of the new house appellants had resided in their home on the south end of the lot; they lived there when the note and lien were executed to get money to pay for the building of the new house, and have at all times so lived, and now. Temporary renting of the home does not cause it to lose its homestead character, but that rule does not apply here: (a) Because appellants had never taken possession of nor occupied the house for homestead purposes, or for any purpose—it had not become their homestead—was not at any time their home. That they intended *at some time in the future* to make it their home did not and does not impress it with homestead rights in them. Jefferson County Inv. & Bldg. Ass'n v. Gaddy (Tex. Civ.App.) 90 S.W.(2d) 295. Appellees admit that the old place was their home. Having one home they could not acquire another until the existing homestead was abandoned, and such abandonment could only be accomplished by removal from and cessation of the use of the existing homestead, and therefore their reason, or attempted excuse, for remaining in possession of their old or existing homestead becomes immaterial. The fact remained that they continued to use and occupy the old place, and so had not made the new house their home. (b) Moreover, it is well settled that when one owning and residing in a house on a city lot as his homestead erects another house on the other end of the lot and rents it and collects the rent and uses the rent for general purposes, that portion of the lot on which the rent house is situated ceases to be a part of the homestead, for the reason it was not being used for any homestead purpose. So, here, when appellants erected the house on the back part of their homestead lot, and when completed rented it, collected the rents, and used same for general purposes and continued to rent it, that portion of the lot ceased to be a part of the homestead. Mays v. Mays (Tex. Civ.App.) 43 S.W.(2d) 148, 151 (writ refused). The acts of appellants worked an abandonment of that part of the lot on which the rent house was situated, and therefore same was subject to foreclosure of the lien.

We overrule appellant Sarah Bertell Yates' plea of coverture as a defense against her liability. The statute gives a married woman the right to contract for the benefit of her separate estate and makes her personally liable for such contracts. The lot on which the new building was erected was the separate property of Mrs. Yates, and the mechanic's lien note and the deed of trust lien given by her and her husband, R. H. Yates, to secure its payment were for money with which to improve and better her said property, and the money so procured was spent for that purpose. Speer on Marital Rights, § 179, p. 238; 23 Tex. Jur. § 169, pp. 199, 200; Id. § 184, p. 219; Sommer v. Kramer (Tex.Civ.App.) 67 S. W.(2d) 1078; Levin v. Jeffers, 122 Tex. 83, 52 S.W.(2d) 81; Dearing v. Jordan, 62 Tex.Civ.App. 107, 130 S.W. 876.

Appellants' assignments asserting that the court erred in granting judgment against appellant Mrs. Yates for attorney's fees, because she was a married woman, and because no valid lien was shown against the property upon which the lien was foreclosed, are overruled. The lot in controversy was the separate property of Mrs. Yates. The note was given and the liens (mechanic's and deed of trust) executed to secure the payment of the note, for money to erect the building on it for the use and benefit of her separate estate, therefore she was personally liable for the payment of the note including attorney's fees, as provided in the note. In this connection it must be remembered that the portion of the lot

against which judgment was rendered was not a part of the homestead.

We also overrule the assignment that the court erred in granting judgment for the amount of taxes against the property shown to have been paid by appellee. The deed of trust given by appellants on the property to secure the payment of the note provided that if appellants did not pay the taxes on the property as they accrued, appellee could do so to protect its rights in the premises. That appellants failed to pay the taxes for the years 1931, 1932, 1933 and 1934, and that appellee did pay same, is not questioned. Appellee had its tax lien for the recoupment and same was properly adjudged in its favor. It is to be remembered that we have held that the portion of the lot in question on which the new building was situated, under the facts was abandoned by appellants as a part of their homestead, and was subject to the asserted liens and to execution.

We have considered all assignments presented by appellants and none of them are believed to show reversible error; therefore the judgment should be affirmed, and it is so ordered.

Affirmed.