**In re Terrell BROOKS, Debtor.**

**In re Randall BROOKS, Debtor.**

**Terrell BROOKS, Randall Brooks, Plaintiffs,**

**v.**

**CHARTER BANK NORTHWEST, Defendant.**

**Bankruptcy Nos. 87–00380–C–13, 87–00381–C–13.**
**Adv. No. 87–0043–C.**

United States Bankruptcy Court, S.D. Texas, Corpus Christi Division.

Feb. 17, 1988.

Jan L. Shepard, Corpus Christi, Tex., for debtors-plaintiffs.

Ron Simank, Kleberg, Dyer, Redfork & Weil, Corpus Christi, Tex., for defendant.

RANDOLPH F. WHELESS, Jr., Bankruptcy Judge.

The adversary proceeding before this Court was filed on May 12, 1987, and originated from the Chapter 11 bankruptcy of a Texas partnership known as "Brooks Brothers." Both partners in Brooks Brothers filed for individual relief under Chapter 13 of the Bankruptcy Code on May 5, 1986. This opinion addresses the singular issue of whether partnership property can be claimed as business homestead in Texas.

FACTS:

In 1977, Terrell and Randall Brooks acting as the "Brooks Brothers" (the partnership) purchased Lots 40 (Forty) through 45 (Forty-five) in City by the Sea subdivision, Aransas County, Texas. The property was duly recorded under the partnership name in the land records of Aransas County.

Later, in January of 1978, the Brooks as *individuals* purchased the Crab Inn Res-

taurant located on adjourning lots 46 (Forty-six) and 47 (Forty-seven). Subsequent expansion of the Crab Inn resulted in it presently covering a portion of Lot 45 (Forty-five) as well as Lots 46 and 47. Summarized testimony as to the use of each of the lots is as follows:

| Lots 40, 41, and 42 | Additional docking facilities and future expansion |
| Lot 43 | Drain fill |
| Lot 44 | Drain fill and parking lot |
| Lot 45 | Parking area and portion of Crab Inn |
| Lots 46 and 47 | the Crab Inn |

The Brooks became the principal owners of "Brooks Albatross" a Texas corporation in 1983. Brooks Albatross on August 28, 1984 obtained a loan in the amount of $600,000.00 from Charter Bank Northwest. As security for the debt, Brooks Brothers (the partnership) granted Charter Bank a security interest in Lots 40 through 45 as well as other partnership property. At the time of the loan, none of the involved parties addressed the issue as to whether the partnership property was a business homestead.

After the partnership filed for Chapter 11 relief, Charter Bank filed a motion for relief from stay against Brooks Brothers to allow foreclosure on Lots 40 through 45. Debtors (the partnership) failed to respond to Charter Bank's motion and the stay lifted. Foreclosure on the partnership's property occurred on May 5, 1987.

Terrell and Randall Brooks (as the partnership) now seek a finding from this Court that Charter Bank's lien on Lots 40 through 45, (as well as Lots 46 and 47 due to the expansion of the Crab Inn) is invalid. They rely primarily on the theory that the lots were their business homestead at all material times, and furthermore that the loan was not granted for purchase money or improvements.

In a hearing held on May 13, 1987, Debtors testified that if the partnership lost use of the lots, parking facilities for the Crab Inn would be grossly inadequate. In addition, loss of the lots would result in the health department closing the restaurant due to insufficient liquid waste disposal.

DISCUSSION:

A. EARLY TEXAS LAW

Early Texas case law permitted partners as individuals, to claim a business homestead interest in partnership property. Courts generally held that the allowance of this homestead exemption was in line with the liberal homestead exemption laws found in Texas. *Phillips v. C. Palomo & Sons,* 270 F.2d 791 (5th Cir.1959); *In re Thompson,* 103 F.Supp. 942 (S.D.Tex.1952).

In determining the exemptability of partnership property, the courts examined whether the property was realty, or personalty such as equipment, machinery, and other tools of the trade. They then would resolve whether the claimed exemptions fell within the confines of exemptions allowed by applicable Texas statutes. *In re Pagel Electric & Ice Co.,* 14 F.2d 974 (S.D. Tex.1926) allowed three partners to claim partnership realty as business homestead. The courts were equally liberal with personalty. *See St. Louis Type Foundary v. International Live–Stock Journal Print. & Pub. Co.,* 74 Tex. 651, 12 S.W. 842 (1889); *Willis v. Morris,* 66 Tex. 628, 1 S.W. 799 (1886).

B. THE TEXAS UNIFORM PARTNERSHIP ACT

The Texas Uniform Partnership Act derived from the Uniform Partnership Act became effective on January 1, 1962. Prior to the adoption of the Texas Uniform Partnership Act, Texas had only procedural statutes which applied to partnership law.

One of the most important features of the Texas Uniform Partnership Act was it's adoption of the entity theory from the Uniform Partnership Act. Texas not only accepted the "entity theory" but carried it further than the Uniform Partnership Act. There are four areas in which the entity theory permeates the Texas Uniform Partnership Act: (1) Property—a partnership is granted power to own and convey property in the name of the partnership, specifically, any individual partner's rights to any property are subordinated to the partnership entity; (2) Creditors Rights—Creditors of the partnership are given priority status in

assets of the partnership; (3) Responsibility—the partnership is held accountable for acts of the partners as agents for the partnership, not for acts of the individuals themselves; (4) Continuity—the Texas Uniform Partnership allows the partnership to survive in several situations where other theories would cause dissolution. *See* Tex. Rev.Civ.Stat.Ann. art. 6132b (Vernon 1970) (Source and Comments—Alan Bromberg); *also Humphrey v. Bullock*, 666 S.W.2d 586 (Tex.App.—Austin 1984, writ ref'd n.r.e.).

## C. THE TEXAS UNIFORM PARTNERSHIP ACT AND BUSINESS HOMESTEADS

As the issue before this Court is whether a partnership is permitted to claim a business homestead it is appropriate to look first to the Texas Uniform Partnership Act. Section 25(2)(c) of the Act provides that:

A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership. When partnership property is attached for a partnership debt the partners, or any of them, or the representatives of a deceased partner, cannot claim any right under the *homestead* or exemption laws. (emphasis added)

The effect of this section is to prevent a partner from claiming a homestead interest in property which belongs not to the individual partner, but to a separate entity— the partnership. Based on this reasoning, the liberal homestead exemption granted to individuals by the Texas Constitution is not in conflict with § 25(2)(c) of the Texas Uniform Partnership Act. *See* (Source and Comments—Alan Bromberg to V.A.T.S. § 6132b § 25(2)(c)).

 The issue of whether a partner may claim a homestead interest in partnership property has been discussed in various treatises. There appears to be agreement among the authors that a partner may not claim a homestead interest in partnership property. The adoption of the Uniform Partnership Act changed the law in numerous states on this issue, among them Texas. Specifically, in *Law of Partnership* it is stated that: "Under the U.P.A. there is

no right in partners to exemption or homestead in specific partnership property,". The authors go on the point out that when partnership property is seized for a partnership debt that no partners, nor representatives of deceased partners are permitted to claim any homestead rights in the partnership property. The section further emphasizes that a homestead exemption is denied only when *partnership* property is involved. *Bromberg, Law of Partnership*, § 44 at 251 (1968), *See J. Grimes, Thompson on Property* § 1937 at 220 (1979).

The San Antonio Court of Appeals in *Kelley v. Shields*, 448 S.W.2d 135, 138 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.) when faced with the question of whether the widow of a partner could claim exemptions in partnership property followed the law as set out in the Texas Uniform Partnership Act and interpreted through the treatises. It was held that the widow was not eligible to claim any exemption rights in partnership property because of the adoption of the entity theory in the Texas Uniform Partnership Act. In the opinion, the Court stated that "a partner's ... authority to claim any benefit under the homestead or exemption laws is limited." Clearly, if the partner's rights are limited that a widow's rights must also be limited. Although this case does not directly involve homesteads, it is analogous and indeed addresses the issue of a homestead claim.

*In re Gorman*, 68 B.R. 541 (Bankr.D.Vt. 1986), although a Vermont case dealt specifically with the issue at hand. Vermont, like Texas, adopted the Uniform Partnership Act, and along with it the concept that a partnership is a separate entity from the partners as individuals. The facts of the case established that a partnership owned certain real property and therefore, the individual partners could not claim a homestead interest in the property.

The adoption of the Texas Uniform Partnership Act in 1962 and the subsequent case law make it clear that individuals have no claim to a homestead interest (business or otherwise) in partnership property.

CONCLUSION

 After considering the above cited statutes, case law, and treatises it is clear to this Court that a partner may not claim a homestead interest in partnership property. The Court therefore finds that Lots 40 through 45 are subject to Charter Bank's lien; and the effect of the foreclosure may not be avoided as none of the lots (being partnership property) can qualify as business homestead.

Charter Bank is requested to prepare a judgment consistent with this opinion.