In re Thomas W. COOPER, Debtor.

Bankruptcy No. 90–61789A.

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

June 12, 1991.

James B. Gillen, Jr., Tyler, Tex., for debtors.

Jason Searcy, Longview, Tex., Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

C. HOUSTON ABEL, Bankruptcy Judge.

A hearing was held on May 1, 1991, on the Objections filed by Creditors First City, Texas—Tyler, N.A. ("First City"), Jacqueline H. Napier ("Napier"), and Dragon Investment Corp. ("Dragon"), to the property claimed as exempt by Debtor Thomas W. Cooper ("Debtor") on Schedule B–4 of his Bankruptcy Schedules filed in this case. The separate Objections filed by First City, Napier, and Dragon were consolidated, for all purposes, into one hearing at the request and consent of all of the parties. Upon hearing the Objections to the property claimed as exempt by Debtor, including the evidence presented and admitted, the arguments of counsel, and the applicable legal authorities, the Court ruled in favor of the objecting Creditors and sustained their Objections by a separate Order signed by the Court. The Court hereby enters the following Findings of Fact and Conclusions of Law, pursuant to Bankruptcy Rules 7052 and 9014, in support of the Order entered by the Court sustaining the Objections. Any Finding of Fact that constitutes a conclusion of law shall be deemed a Conclusion of Law. Any Conclusion of Law which constitutes a Finding of Fact shall be deemed a Finding of Fact.

## FINDINGS OF FACT

1. First City, Napier, and Dragon, are all the present owners and holders of claims against the Debtor in the bankruptcy case.

2. On November 14, 1990, Debtor filed his Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code, and an Order for Relief was entered on the same date.

3. On November 14, 1990, Debtor filed his Schedules of Assets and Liabilities, and his Statement of Financial Affairs, in the case. On Schedule B–4, Debtor elected to claim the exemptions provided under Texas law. The exemptions claimed by Debtor included, in part, the following:

office homestead-property located at 620 South Fleishel, Tyler, Smith County, Texas

office equipment, tools and medical instruments located at 620 South Fleishel, Smith County, Texas

Debtor claimed the above exemptions pursuant to Texas Property Code § 42.002. The real property located at 620 South Fleishel, is more particularly described in a Warranty Deed dated June 8, 1979, from Johnnye Belle Taylor and Mary Edna Bogart, Grantors, to Thomas W. Cooper and William E. Schreiber, Grantees, recorded at Vol. 1744, Page 244, of the Deed Records of Smith County, Texas.

4. Creditors First City, Napier, and Dragon, timely filed written Objections to the property claimed as exempt by Debtor. The Objections included the lack of specificity by the Debtor in describing the property claimed as exempt; that the alleged "office homestead" (hereafter the "office real property") located at 620 South Fleishel was in fact owned by a partnership and therefore could not be claimed by the Debtor as exempt under Texas law; that the "office homestead" was leased at all times by the Debtor to a corporation formed by him, named Thomas W. Cooper, M.D., P.A. (the "P.A."), and therefore did not qualify as homestead property under Texas law; and that the office equipment, tools and medical instruments (hereafter the "office equipment") personally owned by Debtor (as opposed to being owned by the P.A.) and located at 620 South Fleishel was leased at all times by the Debtor to the P.A. and therefore did not qualify as exempt property under Texas law.

5. At the hearing, counsel for the Debtor announced on the record that the Debtor was amending Schedule B–4 to specify in detail the personal property being claimed as exempt by attaching as exhibits to the amended B–4 copies of appraisals of the personal property done at the request of the Debtor. The appraisals reflected that the office equipment, tools, and medical instruments owned personally by the Debtor (as opposed to being owned by the P.A.) and claimed as exempt had a fair market

value of $6,213.50. The amended B–4 would also specify new dollar amounts for the personal property owned by the Debtor and located at his home. The amended Schedule B–4 would also delete the automobile claimed by Debtor.

6. The office real property was jointly purchased, as raw land, by Debtor and William E. Schreiber, with title in both of their names. Thereafter, Schreiber and the Debtor obtained a loan, and had built an office on the land. Schreiber used part of the building to conduct his medical practice, and the other part of the building was used by the P.A. as an office. From the date the building was constructed, until the date of the filing of bankruptcy, rent was paid by Schreiber and the P.A. into a joint checking account which was used for payment of maintenance costs for building, payment of taxes, and other costs associated with owning and operating the building. Any sums left over after the payment of all expenses were returned to Schreiber and the Debtor as profit. The monthly note payments associated with the purchase and construction of the building were paid from this joint checking account, at least until the note was paid off in full. Schreiber and Cooper also agreed to share losses associated with the building on a 50/50 basis.

7. U.S. Partnership tax returns were filed for a partnership named "Schreiber–Cooper Building," which included individual K–1 returns for William E. Schreiber and the Debtor. The tax returns stated that the principal business activity of the partnership was the renting of the building located at South Fleishel. The Schedule K–1 for the Debtor stated that each partner in the Schreiber–Cooper Building partnership shared profits, losses, and capital equally. The tax returns were prepared with information supplied directly by the Debtor.

8. From the time the construction of the building was completed, until at least the time of filing of bankruptcy, the Schreiber–Cooper Building Partnership leased its interest in the office real property to the P.A., and the P.A. paid rent into the joint checking account of Schreiber and Cooper. The office real property was used exclusively by the P.A. Likewise for the personal property. The office real property was leased to the P.A. as a month to month tenancy for at least ten years prior to the filing of bankruptcy.

9. The office equipment was leased by the Debtor to the P.A. on a month to month basis, at least through the date of filing bankruptcy. The P.A. paid the monthly rent of $1,200.00 to the Debtor. The office equipment was used by the P.A.

10. The P.A. is a Texas corporation, in which the Debtor is the sole stockholder and the only officer and director. The Debtor intended that the P.A. be a separate corporate entity, and intended to comply with all formalities of doing business as a corporation. The Debtor intended to, and did in fact, treat the P.A. as a separate corporate entity and enjoyed income tax and other benefits as a result thereof.

11. At the time the office real property was jointly purchased by Debtor and William E. Schreiber, and an office constructed on the land, Debtor owned and occupied a residential homestead with his family on Fry Street in Tyler, Texas.

12. Debtor presented no evidence of an original intent, at the time the office real property was purchased and the building constructed, to occupy the office real property as his business homestead. In fact, the Debtor never utilized the building in a personal manner, but only as an employee of the P.A.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction to hear and decide this contested matter pursuant to 28 U.S.C. § 1334; 28 U.S.C. § 157; and Bankruptcy Rule 9014. This matter is a core proceeding under 28 U.S.C. § 157(b).

2. The Debtor having elected to claim exemptions under state law, Texas law is controlling on the issue of what property may be properly claimed as exempt.

3. Under Bankruptcy Rule 4003(c), the objecting party has the burden of proving that the exemptions are not properly

claimed. In this instance, the objecting Creditors have met their burden of proving that the office real property, and the office equipment, are not properly claimed as exempt by the Debtor under the Texas law. The reasons why this is so are set forth herein and in the Order.

4. The Texas Uniform Partnership Act (Tex.Rev.Civ.Stat.Ann. art. 6132b) became effective January 1, 1962. One of the important features of the Uniform Partnership Act was its adoption of the entity theory of partnership. In summary, a partnership is treated as an entity separate and apart from the individual partners. Therefore, the partnership, as a separate entity, owns the partnership property. Section 25(2)(c) of the Act provides as follows:

"A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership. When partnership property is attached for partnership debt, the partners, or any of them, or the representatives of a deceased partner, cannot claim any right under the *homestead* or exemption laws." (emphasis added).

■ 5. The effect of Section 25(2)(c) is to prevent a partner from claiming a homestead interest in property which belongs to the partnership. *In re: Brooks*, 103 B.R. 123 (S.D.Tex.1988) (applying Texas law).

6. Section 6(1) of the Texas Uniform Partnership Act defines a partnership as " ... an association of two or more persons to carry on as co-owners a business for profit." Some of the indicia of a partnership are the sharing in the profits and losses of a business, and the filing of partnership income tax returns. Texas Uniform Partnership Act, Art. 6132b(7); *McKinney v. Nacogdoches Independent School District*, 489 S.W.2d 161 (Tex.Civ. App.–Tyler 1972), *rev'd on other grounds*, 504 S.W.2d 832; *Howard Gault & Sons v. First National Bank of Hereford*, 541 S.W.2d 235 (Tex.Civ.App.–Amarillo 1976, no writ hist.).

■ 7. The statements of the parties as to whether they have intended to form a partnership is not conclusive on the question of whether a partnership is in fact formed. Even an express statement in a contract disavowing the intent to form a partnership is not dispositive of the issue. It is the intent to do the things that constitute a partnership that determines that the relationship exists between the parties, and if they intend to do a thing which in law constitutes a partnership, they are partners whether their expressed purpose was to create or avoid the relationship. *Howard Gault & Sons, supra*, at p. 237.

■ 8. Since a partnership was formed between the Debtor and William Schreiber, and that partnership owns the office real property, the Debtor cannot, as a matter of law, claim the office real property as exempt property under Texas law.

■ 9. In addition to the reasons set forth above, and as an alternative ground in support of the Court's Order sustaining the Objections to the claim of the office real property as exempt, the leasing of the office real property to the P.A., a separate corporate entity, for approximately ten years up through the date of filing bankruptcy, makes it ineligible for status as a business homestead. To sustain a claim of homestead, there must be proof of concurrence of usage and intent on the part of the owner to claim the property as homestead. *Braden Steel Corp. v. McClure*, 603 S.W.2d 288, 292 (Tex.Civ.App.–Amarillo 1980, no writ hist.); *Prince v. North State Bank of Amarillo*, 484 S.W.2d 405, 409 (Tex.Civ.App.–Amarillo 1972, writ ref'd n.r. e.). Homestead property may be leased to others without an abandonment, but the lease must only be temporary. *Duncan v. Woolf*, 380 S.W.2d 862 (Tex.Civ.App.–Fort Worth 1964, writ ref'd n.r.e.). Here, the continuous usage of office real property was by the P.A., with no evidence of an intent by the Debtor to use the property as an individual. The Debtor had no present right of possession of the property since it was leased to the P.A.

■ 10. The initial character of the office real property was that of rental property, and it remained rental property for the entire period of time up through the filing of bankruptcy. Property which is

rented has long been held ineligible for the homestead exemption. *Yates v. Home Building & Loan Co.*, 103 S.W.2d 1081 (Tex.Civ.App.–Beaumont 1937, no writ hist.); *Texas Commerce Bank–Irving v. McCreary*, 677 S.W.2d 643, 645 (Tex.App.–Dallas 1984, no writ hist.). The result is not changed by the fact that the Debtor is the sole stockholder and director of the P.A. The P.A. remains a separate corporate entity which had the right to possession of the property and made the lease payments, thus making the property ineligible for homestead exemption. *McCreary, supra,* at 646.

11. The office equipment was also leased at all times to the P.A. The office equipment was used by the Debtor only in his capacity as an employee of the P.A., and it was the P.A. who had a present possessory right to the office equipment. The office equipment cannot be properly claimed as exempt by the Debtor for the same reasons the office real property could not. Property whose initial character is that of rental property cannot be claimed as exempt. Furthermore, Section 42.-002(3)(B) of the Texas Property Code, in describing personal property eligible to be claimed as exempt, refers to equipment and tools used by the individual in his trade or profession. The Court finds, as a matter of law, that use of the office equipment by the P.A. is not use by the individual Debtor.

12. Upon proper objection, a Debtor is required to describe with specificity the individual property claimed as exempt in his Schedule B–4. *In re: Wright*, 99 B.R. 339 (N.D.Tex.1989).

## ORDER SUSTAINING OBJECTIONS TO DEBTOR'S CLAIM OF EXEMPTIONS

On May 1, 1991, the Court heard the written Objections of Movants First City, Texas—Tyler, N.A., Jacqueline H. Napier and Dragon Investment Corp., to the list of property claimed as exempt, under Texas law, by Debtor THOMAS W. COOPER. The Debtor appeared in person and with his counsel of record, and the Movants appeared by and through their counsel of record. Having considered the pleadings filed by the parties, the evidence admitted at the hearing, and the argument of counsel, the Court is of the opinion that the Objections filed by Movants pursuant to Bankruptcy Rule 4003(b) should be, and they hereby are, SUSTAINED. It is therefore:

ORDERED that the Objections filed by Movants are hereby SUSTAINED, for the reasons set forth in the Findings of Fact and Conclusions of law entered by the Court in conjunction with this Order.

IT IS FURTHER ORDERED that the Debtor's claim of the real property described in Schedule B–4 as "office homestead" at 620 S. Fleishel, Tyler, Smith County, Texas, and more particularly described in a Warranty Deed dated June 8, 1979, and recorded at Volume 1744, Page 244, of the Deed Records of Smith County, Texas, as a business homestead exempt from creditor's claims under Texas law, is in all things DENIED.

IT IS FURTHER ORDERED that the Debtor's claim of personal property described in Schedule B–4 as "office equipment, tools and medical instruments located at 620 South Fleishel", and more particularly described in the list of equipment attached as Exhibit "A" to this Order, as exempt from creditor's claims under Texas law, is in all things DENIED.

IT IS FURTHER ORDERED that the Debtor shall amend his Schedule B–4, within twenty (20) days from the date of this Order, so as to describe with specificity the personal property located at the residential home of the Debtor, by attaching a copy of the appropriate appraisal performed at the request of the Debtor, as agreed to by the Debtor on the record at the hearing held on May 1, 1991.

**638**

THOMAS W. COOPER, M. D.
MEDICAL EQUIPMENT LIST
APPRAISED BY Evan Stanley, AMS
JANUARY, 1991

| ITEM | QUANTITY | PRICE | TOTAL |
|------|----------|-------|-------|
| Scalpel Handles | 3 ea. | 1.00 | 3.00 |
| Aspirating Pump | 2 ea. | 35.00 | 70.00 |
| Sinus Illuminators | 5 ea. | 6.00 | 30.00 |
| Stainless Steel Instrument Tray | 3 ea | 3.00 | 9.00 |
| Rosen Needle | 2 ea. | 14.00 | 28.00 |
| Alligator Forceps | 11 ea. | 15.00 | 165.00 |
| Ear Spear | 1 ea. | 4.00 | 4.00 |
| Stainless Steel Ear Speculum | 17 ea. | 2.00 | 34.00 |
| Splinter Forcep (Large) | 3 ea. | 1.00 | 3.00 |
| Brown Adson Forceps | 3 ea. | 3.50 | 10.50 |
| Adson Forceps Serrated | 1 ea. | 2.00 | 2.00 |
| 2 Tine Skin Hook | 2 ea. | 2.00 | 4.00 |
| Single Skin Hook | 3 ea. | 1.00 | 3.00 |
| Iris Scissors Straight | 4 ea. | 3.00 | 12.00 |
| Tungsten Carbide Needle Holder | 2 ea. | 6.00 | 12.00 |
| Smooth Adson Forceps | 1 ea. | 2.00 | 2.00 |
| Curved Iris Scissors | 4 ea. | 3.00 | 12.00 |
| Curved Mosquito Forceps | 4 ea. | 2.00 | 8.00 |
| Straight Mosquito Forceps | 2 ea. | 2.00 | 4.00 |
| Needle Holder (Baumgartner) | 1 ea. | 3.00 | 3.00 |
| Small Stainless Steel Bowl | 2 ea. | 2.00 | 4.00 |
| 7½" Curved Forcep | 1 ea. | 3.00 | 3.00 |
| Stainless Steel Nasal Specs. | 10 ea. | 4.00 | 40.00 |
| Bayonette Forceps | 4 ea. | 3.00 | 12.00 |
| Stainless Steel Ear Currette | 12 ea. | 1.50 | 18.00 |
| Stainless Steel Suction Inst. | 21 ea. | 6.00 | 126.00 |
| Laryngeal Mirros | 16 ea. | 1.25 | 20.00 |
| Lacrimal Probe | 7 ea. | 4.00 | 28.00 |
| Operating Scissors | 3 ea. | 2.00 | 6.00 |
| Tuning Forks | 15 ea. | 2.00 | 30.00 |
| Insufflators | 4 ea. | 1.00 | 4.00 |
| SMR Cabinet with Suction | 4 ea. | 400.00 | 1600.00 |
| SMR Surgical Chair | 2 ea. | 300.00 | 600.00 |
| SMR H-Chair (Pump) | 2 ea. | 250.00 | 500.00 |
| Chases ENT Chair | 1 ea. | 300.00 | 300.00 |
| Exam Lights | 2 ea. | 75.00 | 150.00 |
| Burton Coolspot Exam Lamp | 1 ea. | 195.00 | 195.00 |
| Doctor's Stools | 6 ea. | 15.00 | 90.00 |
| Hilger Facial Nerve Stimulator | 1 ea. | 75.00 | 75.00 |
| Ear Irrigation Set | 2 ea. | 2.50 | 5.00 |
| Stainless Steel Med. Cups | 5 ea. | 1.00 | 5.00 |
| Stainless Steel Ointment Jar | 4 ea. | 4.00 | 16.00 |
| Backhaus Towel Clamp | 4 ea. | 3.50 | 14.00 |
| Hartman Cup Forceps | 2 ea. | 12.00 | 24.00 |
| Krause Nasal Snare | 1 ea. | 20.00 | 20.00 |
| Brown Tonsil Snare | 1 ea. | 45.00 | 45.00 |

Page 1 of 3          Sub Total       4348.50

THOMAS W. COOPER, M. D.
MEDICAL EQUIPMENT LIST PERSONAL

| ITEM | QUANTITY | PRICE | TOTAL |
|---|---|---|---|
| Trocar Cannula | 1 ea. | 10.00 | 10.00 |
| Tycos Hand Aneroid | 1 ea. | 15.00 | 15.00 |
| Digital Aneroid | 1 ea. | 9.00 | 9.00 |
| Ambu Bag | 1 ea. | 35.00 | 35.00 |
| Operating Microscope | 1 ea. | 600.00 | 600.00 |
| Storz Insufflator with Tips | 1 ea. | 30.00 | 30.00 |
| Olsen-Hagar Needle Holder Scissor | 1 ea. | 6.00 | 6.00 |
| MDT 5000 Chemiclave | 1 ea. | 150.00 | 150.00 |
| X-Ray View Box | 1 ea. | 25.00 | 25.00 |
| Trocar Needle | 1 ea. | 10.00 | 10.00 |

OFFICE FURNITURE & MISCELLANOUS

| | | | |
|---|---|---|---|
| Couches | 2 ea. | 75.00 | 150.00 |
| Chairs | 1 ea. | 75.00 | 75.00 |
| Glass Shelf Eterge' | 1 ea. | 75.00 | 75.00 |
| Desk & Chair | 1 ea. | 100.00 | 200.00 |
| Camera | 1 ea. | 75.00 | 75.00 |
| Refrigerator | 1 ea. | 50.00 | 50.00 |
| Music System | 1 ea. | 75.00 | 75.00 |
| Books | | 75.00 | 75.00 |
| Desk | 1 ea. | 50.00 | 50.00 |
| Nichol's Furniture | | 150.00 | 150.00 |

Page 2 of 2

Sub Total 1865.00

Grand Total $ 6213.50